

# COURT OF APPEALS

**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

## NO. 02-11-00241-CR
## NO. 02-11-00242-CR
## NO. 02-11-00249-CR

DAVID DANIEL DUFF, JR.                                          APPELLANT

V.

THE STATE OF TEXAS                                                  STATE

----------

FROM THE 43RD DISTRICT COURT OF PARKER COUNTY

----------

## MEMORANDUM OPINION[1]

----------

### I. Introduction

In five points, Appellant David Daniel Duff, Jr. appeals his convictions for aggravated assault of a family member with a deadly weapon and aggravated assault with a deadly weapon. We affirm.

---

[1]*See* Tex. R. App. P. 47.4.

## II. Factual and Procedural Background

After twenty-two years of marriage to Duff, Samantha Duff—a fifth grade teacher in the Army Reserves—moved out and filed for divorce. Around a month later, Duff drove up behind Samantha and her cousin Sherry Fritz and then drove around them, blocked Samantha's car, and pulled up so that both drivers' windows were next to each other. Samantha, who was driving, called 911 when she saw Duff. When she saw Duff's gun, she "ducked and floored it." Duff drove his Jeep into Samantha's car, slamming Samantha's car into a pipe fence on the side of the road, and as the women tried to flee the crash scene, he shot Samantha in each leg.[2] While Samantha was bleeding on the ground, Duff held her by her hair and pointed the gun at her head. Fritz heard Duff scream at Samantha, "Look what you made me do. This is your fault," while Samantha pleaded for him to think of their two sons.

Duff pleaded guilty to the three counts of aggravated assault arising from the incident—one count each for Samantha (CR11-0015) and Fritz (CR11-0017) for the car collision and one count for shooting Samantha. At the conclusion of the punishment trial, with regard to the vehicle-related aggravated assaults, the jury assessed twenty years' confinement in CR11-0015 and ten years'

---

[2]After Fritz escaped Samantha's wrecked vehicle, she called 911 from behind a nearby house. The trial court admitted the recordings of Samantha's and Fritz's 911 calls and allowed them to be published to the jury.

2

confinement in CR11-0017; it assessed sixty years' confinement for the shooting. The trial court entered judgment accordingly, making deadly weapon findings as to all three offenses and setting the punishment for each to run concurrently. These appeals followed.

### III.  Discussion

Duff argues that the trial court erred by overruling his objections, denying his motion for mistrial, and refusing to withdraw two of his guilty pleas.

### A.  Withdrawal of Guilty Pleas

With regard to his second and third points, Duff argues that the trial court abused its discretion by not withdrawing his guilty pleas in CR11-0015 and CR11-0017 because the evidence showed that he was not guilty of these offenses.[3]

When a guilty plea is before a jury, the accused may withdraw his plea at any time before the jury retires. *Abrego v. State*, 977 S.W.2d 835, 837 (Tex. App.—Fort Worth 1998, pet. ref'd) (citing *McWherter v. State*, 571 S.W.2d 312, 313 (Tex. Crim. App. 1978)).  However, when a defendant moves to set aside his

---

[3]Although Duff complains that the evidence showed that Samantha and Fritz suffered no pain from the collision and that his vehicle was not shown to be a deadly weapon, the record reflects that Fritz's airbag did not deploy and her face required five stitches and that when asked whether she sustained any other injuries besides the gunshot wounds to her legs, Samantha said that she had multiple bruises on her legs "and a seat belt bruise."  Samantha's airbag deployed in the collision.

guilty plea but also asks the court to instruct the jury to acquit him, the motion is insufficient to apprise the trial court that the defendant wants to place his guilt in issue for the jury to determine. *Fairfield v. State*, 610 S.W.2d 771, 779–80 (Tex. Crim. App. [Panel Op.] 1981). And the defendant must timely seek to withdraw a guilty plea; if he fails to do so, he may not complain for the first time on appeal that the trial court did not do it for him. *Mendez v. State*, 138 S.W.3d 334, 350 (Tex. Crim. App. 2004); *see also Salinas v. State*, 282 S.W.3d 923, 924 (Tex. App.—Fort Worth 2009, pet. ref'd) (observing that in *Mendez*, the court of criminal appeals relieved the trial court of the duty to sua sponte withdraw a guilty plea when evidence of innocence is introduced during a jury trial on punishment).

After resting his case, Duff's counsel stated, "I'm going to move to withdraw my client's guilty plea as to CR11-0015 *only*, and further *move for an instructed verdict of not guilty*, based upon the fact that there is no evidence to support the allegations as to CR11-0015 *only*." [Emphasis added.]

Duff moved to withdraw his guilty plea in CR11-0015 prior to the jury's retiring. However, he also moved for a directed verdict at the same time, which rendered his motion to withdraw his guilty plea insufficient to apprise the trial court that he wanted to place his guilt in issue for the jury to determine. *See Fairfield*, 610 S.W.2d at 779–80. And because Duff did not move to withdraw his guilty plea in CR11-0017, he failed to preserve this complaint. *See* Tex. R. App.

4

P. 33.1; *Mendez*, 138 S.W.3d at 350; *Salinas*, 282 S.W.3d at 924. Therefore, we overrule Duff's second and third points.

## B. Comments

In his first point, Duff complains that the trial judge erred by overruling his objection to the State's closing argument and then making a comment on the evidence.

Initially in closing arguments, the State argued that the jury should focus on what Duff had done, which was "violent, terrifying, and could have been deadly," not what was wrong with him or why he did it, that Duff deserved the maximum sentence, and that the public should be protected from him. Duff then responded by arguing that while he knew what he had done was wrong and had pleaded guilty, because of his deep depression caused in part by his diabetes and the childhood shooting of his best friend, he needed help and locking him away was not the right answer.[4] He also brought up that he had applied tourniquets to Samantha's legs to stop the bleeding after he shot her.

---

[4]Dr. Peter Oropeza, a clinical psychologist, found that Duff suffered from major depressive disorder, recurrent severe, but was competent to stand trial. When Duff was fourteen, he had accidentally discharged a firearm, killing his best friend, and Dr. Oropeza said that this contributed to the beginning of Duff's mental problems. Duff was on antidepressants and had reported to Dr. Oropeza that at the time of the offenses here, he had been doubling his dosage. Duff had received inpatient mental health treatment on two separate occasions; he also suffered from insulin-dependent diabetes, which contributed to his seizures.

5

During the State's rebuttal, the prosecutor responded by stating that she did not doubt that Duff had depression but did not care and that "the State believes that his mental illness and accompanying instability is an aggravating factor that makes him worse." She argued that the jury had heard Duff blame Samantha for the shooting on the 911 tape, that "this was not a cry for help" by Duff, and that Samantha had had to beg Duff, who had a gun to her head, to think about the effect killing her would have on their children "to get this whack-job off the edge and calm down." She then stated,

> Let me tell you something. If you want to give any thought to the minimum, there's nothing I can say that will matter, so you knock yourself out on that one. *But one thing that the defendant's sister did not tell you on the stand, the one thing that you did not hear from Todd Dixon in his conversations with the defendant after the offense, were the words, "Oh my God, I'm so sorry. I can't believe I did this*." [Emphasis added.]

After Duff objected, the trial judge stated, "By the testimony from other witnesses, that's a reasonable inference from—and so you're overruled." Duff did not object to the trial judge's statement.

The prosecutor then resumed by arguing that Duff's sister had testified about the impact that shooting his friend had had on Duff but not about Duff getting any sort of long-term treatment, which Dr. Oropeza had testified that Duff needed, and asked the jury to give Samantha and Fritz "a life free from fear of this defendant" by taking Duff "off the streets for as long as you possibly can."

6

The jury charge for each offense included an instruction on the defendant's right not to testify.

We first note that forfeiture for lack of an objection applies to most comments made by a trial judge. *See* Tex. R. App. P. 33.1; *Sharp v. State*, 707 S.W.2d 611, 619 (Tex. Crim. App. 1986), *cert. denied*, 488 U.S. 872 (1988); *see also Becknell v. State*, 720 S.W.2d 526, 531 (Tex. Crim. App. 1986), *cert. denied*, 481 U.S. 1065 (1987); *Burton v. State*, No. 02-11-00144-CR, 2012 WL 1034920, at *4 (Tex. App.—Fort Worth Mar. 29, 2012, no pet.) (mem. op., not designated for publication). Further, while a trial judge should not give any indication to the jury of his or her own beliefs about the credibility or weight of the evidence and improperly comments if he or she makes a statement that implies approval of the State's argument, indicates any disbelief in the defense position, or diminishes the credibility of the defense's approach to the case, none of that seems to have happened here. *See Kim v. State*, 331 S.W.3d 156, 160 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd) (setting out what constitutes an improper comment). To the contrary, the trial judge appeared to be thinking aloud when he began his statement about a reasonable inference before overruling Duff's objection, and a reasonable deduction from the evidence is one of the four general permissible

7

areas for the State's jury argument.[5]  *See Felder v. State*, 848 S.W.2d 85, 94–95 (Tex. Crim. App. 1992), *cert. denied*, 510 U.S. 829 (1993).  Because Duff has not shown that fundamental error occurred when the trial judge began his remark before overruling Duff's objection, Duff forfeited his complaint about that remark by failing to object.  *See Sharp*, 707 S.W.2d at 619; *Morgan v. State*, 365 S.W.3d 706, 711 (Tex. App.—Texarkana 2012, no pet.) (noting that neutral, substantially correct statement of law did not prevent a fair and impartial trial and therefore, if error, did not constitute fundamental error, such that failure to object forfeited the complaint); *cf. Wyatt v. State*, No. 03-10-00012-CR, 2012 WL 512654, at *8–9 (Tex. App.—Austin Feb. 16, 2012, no pet.) (mem. op., not designated for publication) (noting that while Texas courts have indicated that improper comments may represent fundamental error when they taint the presumption of innocence or undermine the jury's impartiality, trial judge's comments indicating that defense counsel was broaching a topic previously placed off-limits and

---

[5]While an improper comment creates reversible error if it is either reasonably calculated to benefit the State or to prejudice the defendant's right to a fair and impartial trial, "reasonably calculated" implies that the jury understands the comment to either endorse the State's position or undercut appellant's arguments.  *Kim*, 331 S.W.3d at 161.  On the record here, although Duff argues that the trial judge left his required impartial stance and placed the stamp of approval on the State with his unfinished remark, it does not appear that the trial judge's remark was improper, reasonably calculated to benefit the State, or reasonably calculated to prejudice Duff's right to a fair and impartial punishment trial, even if Duff had objected to it.

characterizing defense witness's testimony as a diatribe did not rise to the level of fundamental error). We overrule this portion of Duff's first point.

With regard to the prosecutor's objected-to comment, the code of criminal procedure provides that a defendant's failure to testify on his own behalf may not be held against him and that counsel may not allude to his failure to testify. Tex. Code Crim. Proc. Ann. art. 38.08 (West 2005). To determine if a prosecutor's comment violated article 38.08 and constituted an impermissible reference to an accused's failure to testify, we must decide whether the language used was manifestly intended or was of such a character that the jury naturally and necessarily would have considered it to be a comment on the defendant's failure to testify. *Id.*; *see Bustamante v. State*, 48 S.W.3d 761, 765 (Tex. Crim. App. 2001); *Fuentes v. State*, 991 S.W.2d 267, 275 (Tex. Crim. App.), *cert. denied*, 528 U.S. 1026 (1999). The offending language must be viewed from the jury's standpoint, and the implication that the comment referred to the accused's failure to testify must be clear. *Bustamante*, 48 S.W.3d at 765. A mere indirect or implied allusion to the defendant's failure to testify does not violate the accused's right to remain silent. *Wead v. State*, 129 S.W.3d 126, 130 (Tex. Crim. App. 2004); *Patrick v. State*, 906 S.W.2d 481, 490–91 (Tex. Crim. App. 1995), *cert. denied*, 517 U.S. 1106 (1996).

Further, while a prosecutor's comment about a defendant's failure to testify violates the federal and state constitutions, a closing argument that refers to the

9

failure of a defendant's *witnesses* to testify about the defendant's remorse does not impermissibly comment on the defendant's failure to testify. *Cooper v. State*, 959 S.W.2d 682, 686 (Tex. App.—Austin 1997, pet. ref'd) ("[T]he State's reference to the defendant's failure to introduce evidence of remorse *through other witnesses* may be erroneous for other reasons but does not constitute a comment on the defendant's failure to testify."); *see also Jennings v. State*, No. 02-08-00145-CR, 2009 WL 1564961, at *5 (Tex. App.—Fort Worth June 4, 2009, pet. ref'd) (mem. op., not designated for publication). A remark that "you would've heard about it from his witnesses" if the defendant were shameful or remorseful, while a misstatement of the law, is not a comment on the defendant's failure to testify. *Thomas v. State*, 638 S.W.2d 481, 485 (Tex. Crim. App. 1982). The remark merely "indict[s] others than appellant individually" for the lack of such evidence. *Id.* And if there is evidence in the record that supports a comment regarding the defendant's failure to show remorse, the comment is a proper summation of the evidence. *Howard v. State*, 153 S.W.3d 382, 385–86 (Tex. Crim. App. 2004), *cert. denied*, 546 U.S. 1214 (2006).

Here, during the State's case in the punishment trial, Todd Dixon, Duff's former neighbor, testified that when he visited Duff four times at the county jail, Duff did not seem to be concerned about Samantha or feel "like he did anything that was that bad." During Duff's case, Duff's sister, Dana Jackson, testified about the shooting incident when Duff was fourteen, during which Duff killed his

10

friend when the firearm he was showing off discharged. Jackson testified that there was "a lot of pain and grief and everything over it," that Duff had seen a psychologist about it, and that Duff had been depressed over it, changing from a happy and outgoing person to a very sad and withdrawn one.[6] The prosecutor argued that neither of these witnesses had testified that Duff had shown remorse for his offenses here. Because the prosecutor's comment referred only to these witnesses' failure to testify about Duff's remorse, the prosecutor did not impermissibly comment on Duff's failure to testify. *See Cooper*, 959 S.W.2d at 686. Accordingly, we overrule the remainder of Duff's first point.

## C. Testimony

In his fourth point, Duff claims that the trial court abused its discretion by denying his motion for mistrial with regard to Samantha's statement that she had had a hard time sleeping until she "realized that he was going to stay in jail until the trial."

We review the denial of a motion for mistrial for an abuse of discretion. *Hawkins v. State*, 135 S.W.3d 72, 76–77 (Tex. Crim. App. 2004). Only in extreme circumstances, when the prejudice caused by the improper argument is incurable, i.e., "so prejudicial that expenditure of further time and expense would

---

[6]Jackson also testified that she and Duff had been taught as children to never point a gun "at anything you didn't want to kill. You don't point guns at people, loaded or unloaded."

11

be wasteful and futile," will a mistrial be required. *Id.* at 77; *see Simpson v. State*, 119 S.W.3d 262, 272 (Tex. Crim. App. 2003), *cert. denied*, 542 U.S. 905 (2004). In determining whether a trial court abused its discretion by denying a mistrial, we balance three factors: (1) the severity of the misconduct (prejudicial effect); (2) curative measures; and (3) the certainty of the punishment assessed absent the misconduct. *Hawkins*, 135 S.W.3d at 77; *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh'g), *cert. denied*, 526 U.S. 1070 (1999). Generally, a trial court's instruction to disregard will cure any prejudice created by the prosecutor's comments. *Simpson*, 119 S.W.3d at 272.

Here, the trial court denied Duff's motion and instructed the jury to disregard Samantha's comment.[7] We presume that the jury followed the trial

---

[7]Specifically, the trial judge gave the following admonishment to the jury:

Ladies and gentlemen, just before the recess, there was some brief testimony that came out about bond status. At this time, I am ordering y'all to disregard that testimony. The status of somebody's bond, how they have a bond, whether they have a bond, why they may or may not be on bond is nothing for you to worry about. There's 100 different reasons why somebody is on bond or is not on bond. And they range from simple things to complicated things.

So for all of those reasons, it's not proper for you to consider and hear about. That's why I'm ordering you to disregard that testimony. Do all of you understand my order?

After all of the jurors agreed that they understood the trial judge's order, the trial judge asked, "Can all of you abide by that order?" The jury agreed again. Then the trial judge asked, "Do you promise and affirm that you will disregard that

12

court's instruction, curing any prejudice, particularly when other evidence admitted during trial also revealed that Duff was in jail pending trial. *See id.*; *see also Beheler v. State*, 3. S.W.3d 182, 187 (Tex. App.—Fort Worth 1999, pet. ref'd) ("Any error in admitting the evidence is cured where the same evidence comes in elsewhere without objection."). Specifically, Samantha's medical records, which were admitted without objection, contain the following statement:

> Mom states pt's husband, David, *is currently in jail on $250,000 bail.* Family states they are obtaining protective orders and are working w/ the police. Mom states pt and family are now on a list to be notified *in the event pt's husband does make bail and get[s] out of jail.* [Emphasis added.]

Further, Dr. Oropeza testified during his direct examination in Duff's case that among other materials he used in evaluating Duff were his conversations with the Parker County jail officers that held Duff in custody.[8] And nothing in the record indicates that the jury would have, absent the alleged misconduct, sentenced Duff to any less time for the violent crimes to which he had pleaded guilty.[9] We overrule Duff's fourth point.

---

testimony and later not use it for any purpose whatsoever?" The jurors again said, "Yes."

[8]We note that although Duff secured a running objection to Dixon's testimony that he had visited Duff at the county jail four times after Duff's arrest, Duff does not complain on appeal about this objection.

[9]To the contrary, during Duff's case, Dr. Oropeza agreed during cross-examination that, without appropriate psychological treatment, there would be nothing to stop Duff from committing similar offenses or worse acts against

13

## D. Limiting Cross-Examination

In his fifth point, Duff contends that the trial court abused its discretion by denying him permission to cross-examine Samantha on the reasons for her 1991 military discharge.[10]

Samantha testified that her second enlistment, in November 2003, had been because Duff had lost his job and been classified as disabled due to his seizures; however, two weeks before she graduated from basic and medic training, she received a hardship discharge—an honorable discharge—because of Duff's mental health issues. During Duff's offer of proof outside the jury's presence, Samantha testified that she had enlisted and been previously discharged in 1991, for misconduct, which was documented as a suicide attempt and which she explained as "a personality disorder because [she] was emotionally distraught because [Duff] kept telling [her] that he was going to take [their older son] and [she] would never see him again." The 1991 discharge precluded her from re-enlisting for at least two years.

---

Samantha, and Samantha stated that if Duff received probation, she would "immediately volunteer for deployment to go to Afghanistan" because she would "be safer there than [she is] here with him."

[10]On appeal, Duff complains that the trial court's failure to permit him to impeach Samantha violates the state and federal constitutions and the code of criminal procedure. However, because Duff made only a general objection at trial, he has failed to preserve these specific complaints for our review. *See* Tex. R. App. P. 33.1; *Mendez*, 138 S.W.3d at 342.

The trial court denied Duff's request to question Samantha about her 1991 military discharge despite Duff's assertion that it was relevant to her credibility. The trial judge informed Duff's counsel that he could ask Samantha "limited purpose" questions about her military record, such as, "'Isn't it true that you have been previously discharged, and you have since reenlisted with the military,'" and "'Isn't it true that you were discharged for personal problems, not military problems,' something to that extent," but not "into a suicide or multiple personality disorders or whatever you were talking about." The trial judge stated that he would allow Duff's counsel to ask Samantha whether she received a general discharge, "neither honorable nor dishonorable." Before the jury, Samantha testified that her first enlistment was in February 1991 and that she received a general discharge, neither honorable nor dishonorable, in March 1991.

We review a trial court's decision to limit cross-examination of a witness regarding credibility for an abuse of discretion. *Walker v. State*, 300 S.W.3d 836, 843–44 (Tex. App—Fort Worth 2009, pet. ref'd); *Pope v. State*, 161 S.W.3d 114, 123 (Tex. App.—Fort Worth 2004), *aff'd*, 207 S.W.3d 352 (Tex. Crim. App. 2006), *cert. denied*, 549 U.S. 1350 (2007); *see also Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1984) (op. on reh'g) (setting out abuse of discretion standard).

The rules of evidence prohibit the use of specific acts to impeach a witness. *See* Tex. R. Evid. 608(b). To support his complaint, Duff relies on

15

*Cunningham v. State*, in which the State impeached the defendant with the conviction of a crime under rule of evidence 609. 815 S.W.2d 313, 319 (Tex. App.—Dallas 1991, no pet.). Generally, under rule 609, evidence of a conviction is not admissible if more than ten years has elapsed since the date of conviction. *See* Tex. R. Evid. 609(b). Here, in contrast, Duff sought to impeach Samantha regarding a suicide attempt twenty years earlier, which had led to a general discharge, not to a criminal conviction; therefore, *Cunningham* is inapposite. *Cf.* 815 S.W.2d at 319.

Duff also refers us to *Winegarner v. State*, in which the court of criminal appeals stated that rule 403 "gives the trial court considerable latitude to assess the courtroom dynamics, to judge the tone and tenor of the witness' testimony and its impact upon the jury, and to conduct the necessary balancing." 235 S.W.3d 787, 791 (Tex. Crim. App. 2007). But absent authority explaining how a suicide attempt twenty years ago would affect the complainant's credibility during trial, Duff has failed to show how the trial court's decision here constituted an abuse of discretion. Therefore, we overrule Duff's fifth point.

## IV.  Conclusion

Having overruled all of Duff's points, we affirm the trial court's judgment.


BOB MCCOY
JUSTICE


PANEL: GARDNER, WALKER, and MCCOY, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  April 11, 2013

17