**JOUNG YOUN KIM, Appellant**

v.

**STATE of Texas, Appellee.**

**No. 14–09–00677–CR.**

Court of Appeals of Texas, Houston (14th Dist.).

Jan. 6, 2011.

Rehearing Overruled March 10, 2011.

Edwin Dee McWilliams, Houston, TX, for Appellant.

David Rogers, Houston, TX, for the State.

Panel consists of Justices ANDERSON, FROST, and SEYMORE.

## PLURALITY OPINION

JOHN S. ANDERSON, Justice.

A jury convicted appellant Joung Youn Kim of prostitution, a class B misdemeanor. The trial court sentenced appellant to twenty days in jail with a credit for two days and a five hundred dollar fine. Appellant raises two issues on appeal. The appellant contends in her first issue that the trial judge commented on the weight of the evidence by resuming the trial on day two without an interpreter after the court provided a translator on day one. In her second issue, appellant contends the trial court deprived her of her due process right to be present at trial because the interpreter was unavailable to her on day two of the trial. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Vice officers of the Houston Police Department engaged in an undercover operation at the Pink Relaxation Studio ("Studio") in Harris County, Texas on May 19, 2008. The parties agree on the basic facts leading to appellant's arrest.

At approximately 1:55 p.m., an undercover officer, Officer Price, entered the Studio. Upon entering, he encountered appellant, who wore only a piece of lingerie known as a "teddy." After a brief discussion, Officer Price paid appellant $70 for "a full hour." Upon receiving the money,

appellant took Officer Price to a room where he undressed. She then proceeded to bathe him.

After the bath, Officer Price asked appellant, "Can we fuck?" Appellant made no verbal response, but disrobed. Officer Price then said he normally paid $100 for "a fuck" and asked her if that was "okay or is that good." She eventually responded that "It's good." At that point, appellant approached Officer Price and attempted to put her mouth on his penis. Officer Price stopped her and requested a condom, which she produced. She then lay down on a bed, opened her legs, and began "rubbing herself." At this point, Officer Price informed the appellant that he was a police officer and called for the rest of his team, which was waiting outside the Studio. Appellant was arrested and charged with prostitution.

Appellant is a Korean national who speaks an indeterminate amount of English. Defense counsel claimed in closing argument she speaks no English. The State challenges this claim by appellant. The record contains no evidence or finding of appellant's command of the English language. Nonetheless, the trial court appointed an interpreter for the appellant prior to trial *sua sponte*. The trial court did not record any reasons for this appointment.

Appellant's case at trial was that she did not speak or understand enough English to agree to the charged offense. The State charged her with agreeing to engage in sexual intercourse for a fee. Appellant argued she agreed to perform oral sex on Officer Price, but never agreed to sexual intercourse. Officer Price testified appellant spoke an acceptable amount of English to understand the transaction. Defense introduced no evidence of appellant's comprehension of English.

During voir dire, defense counsel introduced the interpreter to the panel and stated, "He's not our interpreter. He's appointed by The Court to interpret." The interpreter translated for the appellant throughout the first day of the trial, which included voir dire, opening arguments, and the testimony of Officer Price.

The following morning, the interpreter did not arrive. After both parties rested, the trial judge removed the jury from the courtroom and announced a decision to continue with closing argument and the jury charge in the absence of the interpreter. The trial judge stated his reasons for continuing were as follows: (1) defense counsel requested that the trial court make clear that the translator was present on the court's initiative, not upon appellant's request; (2) the State and defense counsel had already agreed to the jury charge, thus eliminating any need for appellant's input; (3) the court planned to inform the jury that closing arguments are "summation only" and possess no evidentiary value.

The trial court then continued, "For the above reasons, the Court, although it would prefer to have the interpreter present, if just for the sake of continuity, determined that it is unnecessary at this time and, in the interest of proceeding with this case without interruption, finds that no harm is done by doing such." Defense objected to continuing the trial without the interpreter, stating, "[t]he concern we have is that the jury will be left with the impression that the Court has determined she doesn't need an interpreter because she speaks English." The State objected to any discussion of reasons for the translator's absence other than a statement the interpreter was unnecessary because neither party would present evidence. The court declined to give an instruction regarding appellant's

understanding of English because "there is, apparently, no issue of language according to the only testimony that's on the record and ... the defense has insisted, more than once, that the Court inform the jury that it was the Court's decision to bring in an interpreter."

The jury returned to the courtroom and the trial court informed the jurors they would hear the jury charge and summation, but they should deliberate only on the evidence. Then the trial judge added, "For that reason, if you'll notice, the interpreter is not here. That's not for your consideration, whatsoever." The trial judge then read the jury charge and both parties gave their summations.

The same day, the jury deliberated, reached a verdict, and was polled. The jury found appellant guilty of misdemeanor prostitution. The trial court sentenced appellant to twenty days in jail, with credit for two days, and a $500 fine.

## DISCUSSION

### A. Did the trial court comment on the weight of the evidence?

Appellant argues that the trial court committed error by continuing the trial without the presence of the interpreter because doing so was a comment on: (1) the defense theory that the appellant did not agree to commit the charged offense because she did not understand Officer Price's request; and (2) the credibility of Officer Price, who testified appellant could speak English.

### 1. Standard of Review

A judge in a jury trial is a neutral party and should not give any indication to the jury of his own beliefs about the credibility or weight of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.05 (West 2010) (prohibiting judge from commenting on weight of evidence beyond determining

admissibility), Tex.Code Crim. Proc. Ann. art. 36.14 (West 2010) (requiring judges to refrain from commenting on weight of the evidence in jury charges). A trial judge improperly comments on the weight of the evidence if he makes a statement that (1) implies approval of the State's argument; (2) indicates any disbelief in the defense position; or (3) diminishes the credibility of the defense's approach to the case. *Clark v. State*, 878 S.W.2d 224, 226 (Tex. App.-Dallas 1994, no pet.).

If a trial judge improperly comments on the weight of the evidence, we must then decide the materiality of the comment. *Simon v. State*, 203 S.W.3d 581, 592 (Tex.App.-Houston [14th Dist.] 2006, no pet.). A comment is material if the jury was considering the same issue. *Id.* If the comment was material, this court must then determine whether the comment rises to the level of reversible error. *Id.* A comment creates reversible error if it is "either reasonably calculated to benefit the State or to prejudice the defendant's right to a fair and impartial trial." *Id.*

### 2. Analysis

#### a) Did the trial judge inappropriately comment on the weight of the evidence?

Appellant argued that continuing with the trial in the absence of an interpreter was a judicial comment that the court believed: (1) appellant spoke English; and/or (2) Officer Price's testimony that appellant spoke English. Appellant's claim rests on the belief that the jury would see the absence of the interpreter and infer the judge had dismissed him because appellant understood English well enough to follow court proceedings without an interpreter's assistance. If this line of logic is believed, the trial judge com-

mented on the weight of the evidence by implying a disbelief in the defense position that appellant did not speak English sufficiently to agree to the charged act.[1]

For the purposes of this analysis, we will assume without deciding that the trial judge's decision to continue with the trial without an interpreter present was an inappropriate comment on the weight of the evidence.

### b) Was the comment material?

Materiality of the comment is determined by whether the jury considered the same issue. *Id.* at 592. Appellant did not dispute the basic facts of the State's case, conceding her presence at the Studio and that she engaged in various activities with Officer Price. Appellant instead argues she did not speak sufficient English to understand what Officer Price negotiated. As a result, appellant did not agree to provide sexual intercourse and did not commit the target offense.

We assume without deciding that the actions of the trial judge were an inappropriate comment. With this assumption, the comment would be material because it indicates a fact issue that the jury should deliberate on.

### c) If the comment was material, was it reversible error?

A comment creates reversible error if it is "either reasonably calculated to benefit the State or to prejudice the defendant's right to a fair and impartial trial." *Id.* "Reasonably calculated" implies that the jury understands the comment to either endorse the State's position or undercut appellant's arguments. *Id.* at 591–92.

The trial court provided a limiting instruction, instructing the jurors not to consider the absence of the interpreter in their decision. As an appellate court, we are bound to presume judicial instructions to the jury are effective unless evidence shows the jury did not follow the directive. *See Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim.App.1999) (stating most error can be cured with a limiting instruction); *Williams v. State*, 937 S.W.2d 479, 490 (Tex.Crim.App.1996) (noting possible jury confusion over jury charge is not a reason for reversal in the absence of actual confusion); *State v. Boyd*, 202 S.W.3d 393, 402 (Tex.App.-Dallas 2006, pet. ref'd.) ("[A] prompt instruction to disregard will ordinarily cure the prejudicial effect [of error] and the jury is presumed to follow the trial court's instruction ... in the absence of evidence indicating the members of the jury failed to do so.")

Thus, even assuming the trial court's decision to go forth with the trial in the absence of the interpreter was a comment on the weight of the evidence, it is not reversible error. The trial court gave a prompt and appropriate limiting instruction, which we assume was effective without evidence to the contrary.

For the above reason, we find that there is no reversible error on this point and overrule appellant's first issue.

---

1. After both parties rested and the only evidence on the record about appellant's language skills was Officer Price's testimony, the trial court did state that "I guess [a need for an interpreter] would be germane if there was an issue of language. However, there is, apparently no issue of language according to the only testimony that's on the record ..." Nonetheless, this statement was made outside of the jury's presence and therefore is not relevant to a discussion about whether or not the jury was prejudiced by the judge's statements. *See Murchison v. State*, 93 S.W.3d 239, 261–62 and n. 4 (Tex.App.-Houston [14th Dist.] 2002, pet. ref'd) (judge commenting on evidence outside of the jury's presence could not have affected defendant's right to an impartial jury trial).

## B. Was Due Process Violated by the Absence of the Translator Because It Effectively Prevented Appellant from Being Present at Her Own Trial?

Appellant argues that the trial court prevented her presence at trial because the interpreter was not present on day two of the trial. She argues: (1) there is a guaranteed right to an interpreter under both the U.S. and Texas Constitutions as well as a statutory right; (2) the defendant must expressly waive the right to an interpreter, which she did not do; (3) under the "reasonably substantial relationship test," the lack of an interpreter harmed appellant's ability to defend herself.

### 1. Standard of Review

Under the United States Constitution and the Texas Constitution, a defendant has a constitutional right to be present at all stages of the trial if his absence may affect the fairness of the proceedings. U.S. Const. amend. VI (granting right to confront witnesses); Tex. Const. art. I, § 10 (confronting witnesses is a defendant's right); Tex.Crim. Proc.Code Ann. § 38.30 (West 2010), *Faretta v. California*, 422 U.S. 806, 820 n. 15, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) (listing constitutional protections for defendants); see *Miller v. State*, 692 S.W.2d 88, 90 (Tex.Crim.App. 1985) (a defendant has a right to physical presence during trial unless waived).

■■■ Presence requires not only physical attendance but comprehension of the proceedings. *Garcia v. State*, 149 S.W.3d 135, 141 (Tex.Crim.App.2004). A non-English speaking person possesses the right to the assistance of an interpreter during trial proceedings. See *Baltierra v. State*, 586 S.W.2d 553, 558 (Tex.Crim.App. 1979) (stating a person who does not understand English has a constitutional right to an interpreter); *Cantu v. State*, 993 S.W.2d 712, 721 (Tex.App.-San Antonio 1999, pet. ref'd) ("An accused's constitutional right to confront witnesses encompasses the right to have trial proceedings interpreted to the accused in a language he can understand."). Waiver of this right must be express, but determination of whether a defendant needs an interpreter lies within the discretion of the trial court. See *Marin v. State*, 851 S.W.2d 275, 279 (Tex.Crim.App.1993) *remanded on other grounds*, 891 S.W.2d 267 (1994) (stating that waiving some fundamental rights require express waiver.); *Garcia*, 149 S.W.3d at 144–45 (explaining that the right to an interpreter falls under a fundamental right requiring waiver if the judge knows the defendant does not understand English); *Baltierra*, 586 S.W.2d at 559 (stating defendants have a right to an interpreter if the trial judge is aware the defendant needs one).

■■■ When a defendant's constitutional right to be present during the trial has been violated, we consider whether the defendant's presence bears "a substantial relationship to the opportunity to defend," and if it does not, then any error is harmless. *Adanandus v. State*, 866 S.W.2d 210, 219 (Tex.Crim.App.1993). A case with constitutional error must be reversed unless the reviewing court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment. Tex.R.App. P. 44.2(a).

### 2. Analysis

#### a) Did Appellant have a right to an interpreter at all stages of the trial?

■■■ Appellant correctly argues that a non-English speaking person does have a right to an interpreter at her trial. U.S. Const. amend. VI; Tex. Const. art. I, § 10; Tex.Crim. Proc.Code Ann. § 38.30 (West 2010) (stating there is a right to an inter-

preter upon either party's motion or the court's motion in a criminal proceeding if "it is determined that a person charged ... does not understand and speak the English language"). This right endures for the duration of the trial. *Baltierra,* 586 S.W.2d at 559.

Entitlement to enforce this right, however, may be contingent upon either a request by a party for a translator or some finding or judicial notice of the defendant's inability to understand or speak English. *See Garcia,* 149 S.W.3d at 144–45 (fundamental right exists if the judge knows the defendant does not speak English); *Baltierra,* 586 S.W.2d at 559 (trial judge must appoint an interpreter upon notice defendant cannot speak English). The State notes that neither party requested a translator. Nor is there an express finding by the trial court that appellant cannot speak English.

Neither party briefed, nor could the court find, an analogous case in which no record exists of the appellant's capabilities in the English language and neither party requested an interpreter but a trial court appointed one anyway. Nonetheless, we conclude the actions of the trial court were an implicit finding that appellant could not understand English. Thus, the court will assume without deciding that appellant did have a right to an interpreter.

### b) Did Appellant Waive Her Right to an Interpreter?

If a defendant has a right to a translator, she must expressly waive it to relinquish the right. Tex.Crim. Proc.Code Ann. art. 38.30 (West 2010) (right to translator exists upon motion of court or either party if "it is determined" the defendant does not understand English); *See Marin,* 851 S.W.2d at 279 (Tex.Crim.App.1993), *rev'd on other grounds,* 891 S.W.2d 267 (1994) ("Some rights are widely considered

so fundamental ... [that] if a defendant wants to relinquish one or more of them, he must do so expressly."); *Garcia,* 149 S.W.3d at 144–45 (Tex.Crim.App.2004) (explaining that the right to an interpreter falls under a fundamental right requiring waiver if the judge knows of the defendant's inability to understand English); *Baltierra,* 586 S.W.2d at 559 (Tex.Crim. App.1979) (stating a right to an interpreter exists if the trial judge is aware the defendant needs one).

We find nothing in the record that shows appellant made an express waiver of her right to a translator. Thus, appellant did not waive her right to a translator.

### c) Was There Harm Under the Substantial Relationship Test?

 The standard under which we assess harm is the substantial relationship test. *Adanandus v. State,* 866 S.W.2d 210, 219 (Tex.Crim.App.1993). If the defendant's presence does not bear a substantial relationship to the opportunity to defend, the error is harmless. *Id.* We must consider each case individually to determine if harm occurred. *Id.*

Appellant makes a general argument based upon a Federal 10th Circuit case that the translator's absence prevented her from exerting "psychological influence" on the jury. *Larson v. Tansy,* 911 F.2d 392, 395 (10th Cir.1990). The court notes opinions of the 10th Circuit are not binding here, but we consider the argument and conclude appellant's case distinguishable from *Larson.*

In *Larson,* the defense attorney waived the criminal defendant's right to physically attend his trial. *Id.* at 393. Defendant later appealed, arguing deprivation of a right to be present at trial because the counsel waived on his behalf. *Id.* The

court found this argument persuasive because the defendant was unable "to exert a psychological influence upon the jury" and "there is the reasonable possibility that the jury speculated adversely to the defendant about his absence from the courtroom." *Id.* at 395–96 (citing *Wade v. United States,* 441 F.2d 1046 (D.C.Cir.1971)). By contrast, here appellant sat in the courtroom and was visible to the jury. Appellant appears to argue that the absence of a translator negatively affected her ability to make a "psychological impact" on the jury. She has, however, provided no explanation of why the presence of the interpreter would change her "psychological effect" on the jury. Furthermore, as discussed above, even if the translator's absence did raise questions in the jury's mind about the translator's absence, the trial judge gave a prompt and appropriate limiting instruction which we are bound to accept as effective.

Appellant further argues she could not assist counsel because of the translator's absence. "[I]f Ms. Kim was able to 'read' or notice some of the juror's reactions to either the state's witness testimony, the prosecutor's demeanor, or to [defense counsel's] demeanor, she could have assisted in her defense by providing valuable insight to her counsel." This court agrees defendants can provide valuable information and insight to their counsel during trial. In this particular case, however, it is unclear what information appellant would have provided.

At the time of the translator's absence, no witnesses gave testimony.[2] With regard to the prosecution and defense counsel's demeanor, it is hypothetically possible that during summation the appellant could have provided some useful insight. We conclude this was unlikely, however, because of the way summation occurred. The state waived its right to open, so defense counsel gave the first summation. Appellant could not discuss whatever she gleaned from the jury until defense counsel finished his summation. Then the State gave its summation. Defense counsel had no ability to respond to this argument except to object to inappropriate tactics, which defense counsel did multiple times. Any insight appellant might have had could not be used to reframe the issues or change juror perspective because defense counsel had no opportunity to act. Thus, it would appear that the appellant had no opportunity to assist her attorney by providing insight into the parties' demeanor during summation. Further, appellant provided no argument that such insight did exist and could have been used.

As a result of the facts discussed above, the court decides beyond a reasonable doubt that any error that might have occurred was not substantially related to the opportunity to defend and did not contribute to the conviction or punishment.

## CONCLUSION

Having overruled each of appellant's issues, we affirm the judgment of the trial court.

FROST, J., Dissenting.

BROWN, J., Concurring.

---

2. This fact distinguishes this case from our decision in *Garcia v. State,* 161 S.W.3d 28, 30 (Tex.App.-Houston [14th Dist.] 2004, no pet.). In *Garcia,* the five witnesses testified against the accused in a language he could not understand and without the benefit of an interpreter. *Id.* In conducting our harm analysis in that case, we held that "[b]ecause appellant could not understand the testimony of the complaining witness and that of the large number of witnesses against him, it is inevitable that this incapacity hampered his attorney's ability to effectively cross-examine the State's witnesses and, consequently, appellant's ability to participate in his own defense." *Id.*

JEFFREY V. BROWN, Justice, concurring.

I join the plurality's opinion on the first issue—whether the trial court improperly commented on the weight of the evidence. But, because it is unclear that the plurality applied the correct standard of review in its harm analysis, I merely concur with its treatment of the second issue. Whether the correct standard of review in the second issue is that applied by the plurality, the "reasonably substantial relationship" test, or, as the dissent maintains, the standard under Rule 44.2(a), I believe the result would be the same—there was no harm. The judgment should be affirmed.

KEM THOMPSON FROST, Justice, dissenting.

This court should reverse the trial court's judgment and remand for a new trial so that appellant can have an interpreter throughout the trial proceedings. Because the court does not do so, I respectfully dissent.

The other panel members presume that appellant, a Korean national, does not speak or understand the English language and had a right to an interpreter during trial. They agree that appellant did not waive this right and that the trial court erred in proceeding without an interpreter. But, they find the error harmless.

In its harm analysis, the plurality applies an incorrect legal standard and fails to consider that appellant had no interpreter for the entire second day of trial, which included the punishment phase. Under a proper harm analysis, this court should conclude that the failure to provide an interpreter is reversible error because this court cannot determine beyond a reasonable doubt that the error did not con-

tribute to appellant's conviction or punishment.

## The Proper Standard for the Harm Analysis

Under binding precedent, this court should apply the legal standard from Texas Rule of Appellate Procedure 44.2(a), rather than the "reasonably substantial relationship" test, to measure harm from the trial court's failure to provide appellant with an interpreter for the entire trial. *See Garcia v. State,* 149 S.W.3d 135, 146 & n. 43 (Tex.Crim.App.2004); *Garcia v. State,* 161 S.W.3d 28, 29–30 (Tex.App.-Houston [14th Dist.] 2004, no pet.). The plurality states that "[t]he standard under which we assess harm is the substantial relationship test." *Ante* at p. 163. In support of this proposition, the plurality relies upon a 1993 case involving a harm analysis as to the trial court's error in not having the defendant physically present during a pre-trial proceeding. *See Adanandus v. State,* 866 S.W.2d 210, 218–20 (Tex.Crim.App.1993). Under the "reasonably substantial relationship" test, the accused's absence from the courtroom is harmless if the accused's presence does not bear a reasonably substantial relationship to the accused's opportunity to defend. *See id.* A different standard for determining harm is contained in Rule 44.2(a): "If the appellate record in a criminal case reveals constitutional error that is subject to harmless error review, the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment." Tex.R.App. P. 44.2(a).

A defendant in a criminal trial has a right under the Confrontation Clause [1] to

---

1. The Confrontation Clause is contained in the Sixth Amendment of the Constitution of the United States. *See* U.S. CONST. AMEND. VI.

be present in the courtroom throughout the trial. *See Garcia,* 149 S.W.3d at 140. This entitlement includes not only a defendant's right to be physically present but also a right to have a qualified interpreter translate all of the trial proceedings into a language the defendant understands if the defendant does not understand English. *See id.* at 140–41, 145. In *Garcia,* the Court of Criminal Appeals held that (1) because the accused did not understand English, he had a right under the Confrontation Clause to have an interpreter provided to him to translate all of the trial proceedings into a language that he could understand, and (2) the accused did not knowingly and voluntarily waive this right. *See id.* at 140–45. Accordingly, the Court of Criminal Appeals reversed this court's judgment in *Garcia* and remanded the case for assessment of harm under Rule 44.2(a). *See id.* at 146 & n. 43. On remand, this court followed the instructions from the higher court and conducted a harm analysis under Rule 44.2(a); this court did not use the "reasonably substantial relationship" test in assessing harm. *See Garcia,* 161 S.W.3d at 29–30.

Though the Court of Criminal Appeals has not explicitly disapproved the use of the "reasonably substantial relationship" test applied in the *Adanandus* case, it implicitly disapproved the continued utilization of this test in *Jasper v. State,* a case in which the high court assessed harm as to the trial court's error in conducting a part of the trial without the defendant in the courtroom. *See Jasper v. State,* 61 S.W.3d 413, 422–23 (Tex.Crim.App.2001). The *Jasper* court assessed harm using the Rule 44.2(a) standard, not the "reasonably substantial relationship" test, and research reveals no case since *Jasper* in which the Court of Criminal Appeals has used the "reasonably substantial relationship" test

to assess harm for a violation of the defendant's right to be present in the courtroom throughout the trial. *See id.* Indeed, in 2004, the *Garcia* court remanded the case to this court with specific instructions to assess harm under Rule 44.2(a) for a violation of the defendant's right to be present in the courtroom throughout the trial. *See Garcia,* 149 S.W.3d at 146 & n. 43. That same year, this court held that the trial court's erroneous exclusion of a criminal defendant from the courtroom during the punishment phase was not harmless. *See Kessel v. State,* 161 S.W.3d 40, 48–49 (Tex. App.-Houston [14th Dist.] 2004, pet. ref'd). In doing so, this court did not use the "reasonably substantial relationship" test but instead applied Rule 44.2(a). *See id.* The plurality's invocation of the "reasonably substantial relationship" test to assess harm in the case under review conflicts with binding precedent from both the Court of Criminal Appeals and from this court. *See Garcia,* 149 S.W.3d at 146 & n. 43; *Jasper,* 61 S.W.3d at 422–23; *Garcia,* 161 S.W.3d at 29–30; *Kessel,* 161 S.W.3d at 48–49. Today, the court should assess harm under Rule 44.2(a) by determining whether beyond a reasonable doubt the absence-of-the-interpreter error did not contribute to appellant's conviction or punishment.

**Harmful Error**

In its harm analysis, the plurality gives the impression that the only part of appellant's trial at which she did not have an interpreter was closing argument in the guilt/innocence phase. Appellant had no interpreter for the entire second day of trial, which included the punishment phase during which the State offered evidence against her. Appellant was without an

interpreter during the following parts of the trial:

(1) the State's announcement that it rested its case-in-chief,

(2) appellant's decision not to testify or present any evidence and the announcement by appellant's counsel that appellant rested her case,

(3) a bench conference out of the presence of the jury regarding appellant's motion for directed verdict and appellant's objection to proceeding without an interpreter,

(4) the trial court's reading of the jury charge,

(5) closing arguments in the guilt/innocence phase,

(6) the announcement of the jury's verdict in the guilt/innocence phase,

(7) the polling of the jury, and

(8) the entire punishment phase, including:

- the State's proffer of evidence against appellant,
- appellant's decision not to testify or present evidence during the punishment phase,
- arguments of counsel,
- discussion of an alleged prior prostitution conviction, and
- the trial court's assessment of punishment.

The proceeding culminated in the loss of appellant's liberty.

### Impact of Inability to Understand Proceedings on Appellant's Courtroom Demeanor

The plurality concludes that the physical absence of a defendant during closing argument might be held against her and that the defendant's presence might have a "psychological impact" on the jury during closing arguments. The plurality focuses on appellant's physical presence in the courtroom throughout the trial. But the plurality does not address the effect that appellant's failure to understand the proceedings had on her demeanor, comportment, and appearance in front of the jury. Though the plurality properly presumes that appellant did not understand English and therefore did not understand what was occurring throughout the second day of the trial, the plurality fails to scrutinize the impact of this inability to understand on either appellant or the jury's perception of appellant.

During the State's closing argument, appellant could view the jury's reactions to the prosecutor's statements but, with no translation, she could assign no meaning. More importantly, because appellant could not understand what was being said, she unwittingly might have given those deciding her fate the wrong impression—one born out of an inability to appreciate what was happening. Appellant's facial expressions, body language, or deportment might have been inappropriate to what was being said during closing argument. Any inopportune change in appellant's facial affect or other non-verbal behavior could have been misinterpreted by the jury in ways that prejudiced appellant. Not understanding what was transpiring in the courtroom due to the language barrier, appellant might have appeared aloof or uninterested, as if she were not taking the trial seriously. The inability to understand the proceedings due to the absence of an interpreter can easily cause a defendant to present an unfavorable impression to the jury. In this way, the accused's physical presence uncoupled from the ability to understand the language spoken and to respond appropriately is, in some respects, more harmful than physical absence.

### Inability to Assist Counsel During Guilt/Innocence Phase

The lack of an interpreter also prejudiced appellant's ability to assist in her

own defense. The plurality indicates that, because the State waived its right to open during closing arguments, appellant had no opportunity to assist her counsel in objecting or responding to the State's closing argument. Even though appellant's counsel had no further closing argument to make, with the help of an interpreter, appellant still would have had the ability to prompt and communicate with her counsel regarding any misstatements made during the State's closing argument or objections that appellant would have liked her counsel to have made during the State's closing. Though the plurality notes that appellant's counsel made several objections during the State's closing argument, the plurality does not acknowledge that, because there was no interpreter, appellant was unable to have any input into her counsel's objections. Moreover, because the trial court was assessing punishment, if appellant had been provided the requisite interpreter so that she could understand the closing arguments, appellant could have advised her counsel of any incorrect or misleading statements made by the State during closing so that appellant's counsel, at least, could have brought such matters to the trial court's attention before the court assessed punishment.

### Inability to Testify or Assist Counsel During Punishment Phase

In addition, even if a defendant has made a preliminary decision not to testify during the punishment phase, after hearing closing arguments and the jury's "guilty" verdict, the defendant may (and sometimes does) decide to exercise the right to testify during the punishment phase. Without an interpreter, appellant did not have that opportunity.

The Confrontation Clause guarantees the accused a right to be confronted with the witnesses against her. Under binding precedent, the Confrontation Clause gives appellant the right to have a qualified interpreter translate all of the trial proceedings into the Korean language. *See Garcia*, 149 S.W.3d at 140–41, 145. Though an interpreter was present when witnesses testified against appellant in the guilt/innocence phase, no interpreter was present when evidence was offered against appellant during the punishment phase. During this part of the proceeding, the State not only offered all of the evidence from the guilt/innocence phase but also offered additional documents that the prosecutor indicated contained a judgment reflecting a prior prostitution conviction of appellant. Appellant's trial counsel stated he had no objections. The trial court reviewed the documents and determined that they did not reflect a judgment of conviction but rather a "guilty" plea, deferred adjudication, and dismissal of the charge following completion of deferred adjudication. This court presumes that, without an interpreter, appellant did not understand the proceedings during the punishment phase and therefore was unable to communicate with her counsel regarding the alleged prior conviction, including the disposition of the charges, and indeed whether she was even the same person who had been charged with prostitution in that prior case. Because appellant lacked an interpreter, she presumably was unable to understand the proceedings at the crucial moment when she decided whether she should testify or offer any evidence.

During the punishment phase, appellant's counsel requested that appellant receive no fine and two days' confinement in jail, which appellant already had served. The State argued for a thirty-day sentence with no fine. The trial court sentenced appellant to twenty days' confinement and a $500 fine for an offense carrying a maximum sentence of 180 days' confinement and a $2,000 fine. *See* TEX. PENAL CODE.

Ann. §§ 12.22, 43.02(c) (West 2008). This court cannot determine beyond a reasonable doubt that the absence of an interpreter did not contribute to appellant's punishment.

## Conclusion

The void created by the lack of an interpreter impacted both appellant's outward appearance and her internal decision-making. Not understanding the language spoken during the proceedings, appellant could not be sure to have an appropriate demeanor before the jury during closing arguments in the guilt/innocence phase. And, without an interpreter, she could not assist her counsel by pointing out inaccurate, misleading, or potentially objectionable statements by the prosecutor. Perhaps most importantly, appellant was unable to assist in her own defense at crucial times during the proceeding. The record reflects that appellant had no prior convictions, yet, without an interpreter, she lacked the ability to testify during either the guilt/innocence phase or the punishment phase. After reviewing the entire record, this court should conclude that it cannot determine beyond a reasonable doubt that the absence of an interpreter did not contribute to appellant's conviction or punishment. Indeed, because of the trial court's error, the one who stood to lose the most from the trial proceedings was the one least equipped to understand or participate in them. For these reasons, this court should reverse the trial court's judgment and remand for a new trial so that appellant can have an interpreter throughout the trial proceedings.