**Affirmed and Memorandum Opinion filed November 14, 2013.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-12-00659-CR

---

### RODOLFO RUIZ, Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

**On Appeal from the 239th District Court
Brazoria County, Texas
Trial Court Cause No. 67,899**

---

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant, Rodolfo Ruiz, of three counts of sexual assault of a child and assessed his punishment at twelve years' confinement and a $2,000 fine for each count; judgment was entered accordingly by the trial court. On appeal, he asserts that the trial court abused its discretion by permitting the State to use a demonstrative exhibit of a photograph of two capsules of a drug and allowing a Brazoria County crime laboratory chemist to testify as to the pharmacological effects of this drug on the human body. He further contends that the trial court's

amended limiting instruction regarding the use of extraneous-offense evidence constituted an improper comment on the weight of the evidence. We affirm.

## BACKGROUND

Because appellant has not challenged the sufficiency of the evidence, we describe the facts of the case only briefly here and as necessary in this opinion to resolve this appeal. Appellant was indicted for three counts of sexually assaulting his fourteen-year-old daughter, V.R., by intentionally or knowingly causing the penetration of her sexual organ using his finger. The indictment alleged that these offenses occurred on or about August 22, August 31, and September 7, 2010.

V.R. and her older brother lived in San Antonio with their older sister. They went to visit their father, appellant, in Pearland, Brazoria County, for the summer of 2010. While they were staying with appellant and their step-mother in his two-bedroom trailer home, V.R., her brother, and appellant's two other sons—V.R.'s half brothers—all shared one bedroom. V.R. slept in a small bed, and her brother and two half-brothers shared a larger bed. Around August 22, V.R.'s brother returned to San Antonio. The night that her brother left, appellant moved V.R. into the bigger bed and moved her two younger half-brothers into the smaller bed. That night, for the first time, appellant gave her and her two younger half-brothers "little green pills" to make them sleep. V.R. fell asleep very quickly, but woke up to find appellant in the bed with her, his hand in her underpants, and his finger in her vagina. Appellant warned her not to tell anyone; he threatened to kill her, everyone on her mother's side of the family, and himself if she did.

Appellant continued to commit the same acts—giving V.R. and her half-brothers "sleeping pills," getting in bed with V.R., and placing his finger inside her vagina—each night during the approximate two-week period from August 22 to September 7, 2010. V.R. took the pill the first night appellant gave it to her, but

2

avoided swallowing it the rest of the time by hiding it under her tongue and then, when appellant wasn't looking, going to the bathroom and spitting it out into the toilet.

On September 9, 2010, V.R. and one of her younger half-brothers got into trouble because they weren't home when appellant and his wife got there. V.R.'s stepmother told appellant to hit V.R. and called V.R. names; V.R. went into her bedroom, upset and in tears. Appellant came into the room with a paddle, and V.R. told him that if he hit her, she would "call the cops" and tell them that he had been touching her at night. She also told her stepmother he had been touching her, but her stepmother called her a liar. Appellant went into the kitchen, took a knife, and acted as if he were going to stab himself. V.R.'s stepmother attempted to calm him down and made unflattering remarks about V.R. While this commotion was ongoing, V.R. left the home and did not return; she stayed with relatives of her stepmother that night. She later discovered that an ambulance was in front of appellant's home.

The next day, before and after school, V.R. spoke with a friend. She went home with this friend and spoke with the friend's mother. After talking with her friend's mother, they called the police. While waiting for the police, V.R.'s stepmother came to her friend's home looking for her. Her friend's mother told V.R.'s stepmother that V.R. wasn't there because she didn't believe it would be safe for V.R. to return home. Later that evening, V.R. spoke with police; appellant was subsequently arrested and indicted as described above.

At appellant's trial, V.R.'s friend, her friend's mother, V.R.'s older sister, V.R., the first responding police officer, and a Brazoria County Sheriff's Office chemist testified. After hearing the testimony and arguments of counsel, a jury convicted appellant of three counts of sexual assault of a child as charged in the

3

indictment. Following a hearing on punishment, the jury assessed punishment at twelve years' confinement in the Texas Department of Criminal Justice, Institutional Division and a $2,000 fine for each count. The trial court ordered the sentences to run consecutively. Appellant's motion for new trial was denied by operation of law, and this appeal timely followed.

EVIDENTIARY ISSUES

## A. State's Exhibit 8 – Demonstrative Evidence

In his first issue, appellant asserts that the trial court abused its discretion by permitting the State to use Exhibit 8, a photograph of two green and yellow capsules, for demonstrative purposes because it was irrelevant and inflammatory. We review a trial court's admission of demonstrative evidence for abuse of discretion.[1] *Simmons v. State*, 622 S.W.2d 111, 113 (Tex. Crim. App. 1981). As is relevant here, we have held that "visual, real, or demonstrative evidence is admissible where it tends to resolve some issue at trial and is relevant to the case unless the prejudicial effect clearly outweighs its probative value." *Posey v. State*, 763 S.W.3d 872, 875 (Tex. App.—Houston [14th Dist.] 1988, pet ref'd). We have further indicated that

> [a]n object, which is not an exact replica of the original used in the commission of a crime, may be admissible if:
>
> (1) the original is not available;
>
> (2) if available, the original would be admissible;
>
> (3) it is relevant *and* material to an issue in controversy;

---

[1] It is undisputed that State's Exhibit 8 was not **admitted** as evidence; it was used solely for demonstrative purposes. Neither appellant nor the State argues any distinction in the standards for reviewing the trial court's decision to admit or merely display demonstrative materials. Therefore, we apply the standard of review applicable to admitted demonstrative evidence, finding no specific distinction in authority from our court or the Texas Court of Criminal Appeals.

4

(4) its probative value outweighs any inflammatory effect; *and*,

(5) the jury is instructed that the object is not the object used in the commission of the crime, and is to be considered by the jury solely as evidence that *demonstrates* or *illustrates* what the object used in the offense looks like.

*Miskis v. State*, 756 S.W.2d 350, 352 (Tex. App.—Houston [14th Dist.] 1988, pet. ref'd) (citing *Simmons*, 622 S.W.2d at 113).

V.R. testified that appellant provided her and her half-brothers with "little green pills" to make them sleepy. She later agreed with the State that appellant gave her green and yellow pills, yet on cross-examination, she also agreed that the pills were green and white. V.R. identified the photograph provided in State's Exhibit 8 as "similar to" the pills that appellant provided to her each night before he sexually assaulted her. The State tendered the exhibit into evidence. Appellant objected on the basis of relevance. The State urged that the exhibit's relevance was connected to State's Exhibit 4, appellant's medical records, which were admitted into evidence and indicate that the day before V.R. reported these offenses to police, appellant attempted to commit suicide by overdosing on the prescription drug Tramadol. The trial court refused to admit State's Exhibit 8 into evidence without further predicate.

Subsequently, Brazoria County Sheriff's Office chemist Laura Cook testified that she was familiar with Tramadol. At this point in her testimony, the State sought admission of Exhibit 8, for demonstrative purposes only. The trial court admitted this photograph, over appellant's 401 and 403 objections, as a demonstrative exhibit. Cook described Tramadol as a pain-relieving drug that may cause dizziness, drowsiness, and tiredness, among other things. Cook testified that Tramadol comes in a green and yellow capsule form. She identified the green and

5

yellow capsules in State's Exhibit 8 as Tramadol, based on their appearance and the markings on them.

State's Exhibit 8 had unmistakable relevance. The green and yellow pills identified in this photograph by V.R. were alleged to be used in the commission of these offenses. Based on appellant's medical records, which had previously been admitted, the jury was aware that appellant had access to Tramadol, and Cook's testimony established that this medication caused drowsiness and tiredness. We conclude that this demonstrative evidence was relevant to corroborate V.R.'s testimony that appellant gave her and her half-brothers little green "sleeping pills" because, as V.R. testified, they were "similar to" the Tramadol capsules pictured in Exhibit 8. *See* Tex. R. Evid. 401 (defining "relevant evidence" as that evidence having any tendency to make the existence of any fact consequential to the determination of the action more or less probable than it would be without the evidence).

Further, this picture of the capsules of Tramadol had little to no inflammatory effect unrelated to its probative value. Appellant urges that the exhibit was used to show the extraneous offense of delivery of a controlled substance to a minor. That is, however, the probative aspect of the exhibit. This demonstrative evidence tended to solve an issue in the case by shedding some light on the subject at hand—the drug that was given to V.R. and her half-brothers to make them sleepy so that appellant could commit these offenses against V.R. *See Simmons*, 622 S.W.2d at 113; *cf. Morales v. State*, 389 S.W.3d 915, 919 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (discussing admission of same-transaction contextual evidence to place instant offense in context). The use of this medication on V.R. and appellant's other children showed appellant's manner of committing these offenses and explained why his sons slept through the incidents

even though they were in the same room where the offenses occurred. *Cf. Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011) (holding that evidence of another crime, wrong, or act may be admissible as same-transaction contextual evidence when it is intermixed, blended, or connected so it forms an indivisible criminal transaction). Accordingly, the probative value of this evidence outweighs any inflammatory effect.[2]

Finally, even if the trial court erred in admitting this demonstrative exhibit, it was harmless. Errors that do not affect substantial rights must be disregarded. *See* Tex. R. App. P. 44.2(b); *Orrick v. State*, 36 S.W.3d 622, 627 (Tex. App.—Fort Worth 2000, no pet.). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *Coble v. State*, 330 S.W.3d 253, 280 (Tex. Crim. App. 2010). But if the improperly admitted evidence did not influence the jury or had but a slight effect upon its deliberations, such non-constitutional error is harmless. *Id.* In reviewing harm, we examine the entire trial record and calculate, as best as possible, the probable impact of the error upon the rest of the evidence. *Id.* We consider the

---

[2] On the final *Miskis* factor, we note that the trial court was not requested to and did not give an instruction that "the object is not the object used in the commission of the crime, and is to be considered by the jury solely as evidence that *demonstrates* or *illustrates* what the object used in the offense looks like." 756 S.W.2d at 352. Here, however, the trial court did not admit the exhibit into evidence. Moreover, appellant argued extensively to the jury during closing about the absence of the actual "object," including the following remarks:

> They don't have a drug to submit to you to say that this man gave her Tramadol to make her drowsy. They don't have that. They showed you a picture. The Judge would not allow it in. So, there is no evidence of it. It was not allowed in. You don't have that to see. You don't have that proof. Here's the other thing. The State didn't bring an officer to say that we searched that house and we found a green and yellow pill, Tramadol. In fact, what did Ms. Cook say? That came from an online picture that had nothing to do with this case. They want you to think that. But there's not any evidence from that stand for you to take back to that jury room that says it does.

7

evidence supporting the particular issue to which the erroneously admitted evidence was directed, but that is only one factor in our harm analysis. *Id.*

Based on V.R.'s description of the pills and their effect on her, the admission of appellant's medical records indicating his attempted overdose with Tramadol, and Cook's testimony describing the appearance of Tramadol and its pharmacological effects, the jury could have inferred that appellant had given V.R. and her half-brothers this medication to make them drowsy or sleepy so that he could commit these offenses against V.R. without interruption or witnesses, even without the admission of this demonstrative exhibit. Further, V.R.'s testimony, standing alone, is sufficient to support appellant's conviction. *See* Tex. Code Crim. Proc. Ann. art. 38.07 (a), (b)(1). The admission of the photograph of these capsules for demonstrative purposes likely did not influence or had but a slight effect on the jury's determination of appellant's guilt. Accordingly, any error in the admission of this photograph was harmless.

Under these circumstances, we overrule appellant's first issue.

## B.    Admission of Cook's Testimony

Appellant asserts in issue two that the trial court abused its discretion by allowing Cook to testify regarding the pharmacological effects of Tramadol on the human body because she was not qualified under Texas Rules of Evidence 701 and 702. We review a trial court's ruling on the admissibility of expert testimony for an abuse of discretion. *Rodgers v. State*, 205 S.W.3d 525, 528 (Tex. Crim. App. 2006); *Carter v. State*, 5 S.W.3d 316, 319 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd). We afford great deference to the trial court's determination that a witness is qualified as an expert. *Rodgers*, 205 S.W.3d at 527–28.

8

Appellant focuses his argument on appeal on admission of Cook's testimony under Texas Rule of Evidence 702,[3] which provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.

Tex. R. Evid. 702.  Three criteria assist us in assessing whether a trial court has clearly abused its discretion in ruling on an expert's qualifications:  (1) whether the field of expertise is complex; (2) how conclusive the expert's opinion is; and (3) the centrality of the expert's area of expertise to resolution of the case. *Rodgers*, 205 S.W.3d at 528.

Here, Cook testified that she had worked for the crime lab for two-and-one-half years.  She described her educational background, beginning with a bachelor's degree in forensic science.  She explained that she had "many weeks" of in-house training, including various drug classes, including classes on "amphetamines and marijuana and opiates."  Cook stated that she had "also taken a couple of courses with West Virginia University on toxicology effects of drugs on the body."  She testified that she has been an expert witness about twenty times before.  According to Cook, in her training and experience, she had heard of a drug called Tramadol, which is a type of pain reliever.

After the admission of State's Exhibit 8 for demonstrative purposes, discussed above, appellant's counsel requested permission to take Cook on voir dire regarding her "credibility as an expert."  During this voir dire questioning, which occurred in the presence of the jury, appellant's counsel asked Cook what

---

[3] Although appellant identifies Rule 701 in his issue, in the argument supporting his issue, he focuses solely on Rule 702.  Further, Rule 701 focuses on opinion testimony by lay witnesses, and Cook was testifying as an expert witness.

part of her training "dealt with the effect of narcotics on the human body." Cook replied that she took an online class at West Virginia University and had done "a lot of reading." She acknowledged that she had no training in physiology and that her only pharmacology training came from the online class. After this brief voir dire, appellant's counsel objected to her qualifications to testify before the jury "about the effects of any drug on the body" under Texas Rules of Evidence 701, 702, and 703. The trial court overruled these objections.

Cook then testified that Tramadol is a pain reliever that can cause dizziness, tiredness, headaches, stomach aches, or drowsiness. She stated that Tramadol is not an opiate-based drug, but is similar to and acts much like codeine. She explained that Tramadol comes in pill and capsule form. According to Cook, it comes in a green and yellow capsule form. She identified State's Exhibit 8 as capsules of Tramadol based on their color and the markings on the capsules in the photograph. The State then tendered State's Exhibit 8 for demonstrative purposes.

We cannot say the trial court abused its discretion in permitting Cook to testify as an expert in this case. Considering the criteria provided in *Roberts*,[4] the field of expertise necessary is not particularly complex—determining the side effects of most prescription medications by running a search on the World Wide Web is fairly easy for anyone with an Internet connection. Here, Cook stated that she was familiar with Tramadol and had taken courses on the toxicological effects of drugs on the body. *Cf. Carter*, 5 S.W.3d at 318–19 (quoting *Holloway v. State*, 613 S.W.2d 497, 501 (Tex. Crim. App. 1981) for the proposition that the special knowledge qualifying a witness as an expert "may be derived entirely from a study of technical works, or specialized education, or practical experience or varying combinations thereof"). Next, the information provided by Cook was not

---

[4] 205 S.W.3d at 528.

conclusive on a material issue: the jury had already been informed by V.R. that appellant gave her and her half-brothers pills that made them sleepy. Even if it had been some other medication than Tramadol, the evidence that appellant provided sleeping medication to the three children was already before the jury. Further Cook's testimony was not central in determining appellant's guilt or innocence;[5] as noted above, V.R.'s testimony alone is sufficient to support appellant's conviction.[6]

For the foregoing reasons, we overrule appellant's second issue.

### ORAL LIMITING INSTRUCTION

In his third issue, appellant contends that the trial court's amended oral limiting instruction regarding the use of extraneous-offense evidence constituted an improper comment on the weight of the evidence. Appellant was indicted with three counts of the offense of sexual assault of a child, alleging the same acts against V.R. on or about three different dates: August 22, 2010, August 31, 2010, and September 7, 2010.

V.R. provided specific details about the first and third counts that were shown through testimony of other witnesses to have occurred on or about August 22 and September 7. Before V.R. testified that appellant committed the same acts against her multiple times, the State proffered her testimony outside the presence

---

[5] The fact that her testimony was not central to deciding this case does not mean that it was not relevant. Indeed, her testimony was crucial in linking V.R.'s description of the "little green pills" given to V.R. and her half-brothers by appellant to the Tramadol discussed in appellant's medical records. See our discussion above regarding admission of State's Exhibit 8.

[6] In *Rodgers v. State*, the Court of Criminal Appeals held that a latent print examiner was qualified to provide expert testimony regarding a shoe print and tire tracks based on his in-house training with the Dallas County Sheriff's Department, an apprenticeship with a certified print examiner, and various classes at the Sheriff's Department, the University of North Texas, and an FBI conference, despite the fact that he had only a few days of class work on shoe and tire imprints. 205 S.W.3d at 529.

11

of the jury. Appellant's counsel objected that these other instances of misconduct constituted extraneous offenses, which were more prejudicial than probative. The trial court overruled appellant's objection, but in response to appellant's request, the trial court provided the following limiting instruction:

> Ladies and gentlemen of the jury, at this time the following testimony is being offered for a very limited purpose. You can only consider the testimony for the limited purpose as it relates, if any, to the previous and subsequent relationship between the defendant and the child and for no other reason.

V.R. then testified before the jury that appellant continued to sexually assault her by placing his finger in her vagina every night between the two specific instances she had previously described.

The following day of trial, after the presentation of V.R.'s testimony and outside the presence of the jury, the trial court informed the parties that he intended to provide an amended instruction to the jury. Appellant objected that the amended instruction commented on the weight of the evidence and that it gave "undue emphasis" to V.R.'s testimony regarding the three dates alleged in the indictment.[7] The trial court overruled appellant's objection and provided the following oral instruction to the jury:

> Yesterday I gave you an instruction regarding testimony of the complaining witness regarding instances, if any, that purportedly occurred, if any, between on or about August 22nd, 2010, and on or about September 7th, 2010. I am hereby amending that instruction to omit any instances, if any, that occurred, if any, on or about August 31st, 2010.[8]

---

[7] By this point, other witnesses had established dates for the first and third counts in the indictment by linking key events in V.R.'s testimony to actual dates, something V.R. had been unable to do through her testimony.

[8] In the jury charge on guilt-innocence, the trial court included the following extraneous-offense charge:

A judge in a jury trial is a neutral party and should refrain from giving any indication to the jury of his own beliefs about the credibility or weight of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.05 (prohibiting judge from commenting on weight of evidence beyond determining admissibility). A trial judge improperly comments on the weight of the evidence if he makes a statement that implies approval of the State's argument, indicates any disbelief in the defense's position, or diminishes the credibility of the defense's approach to the case. *Kim v. State*, 331 S.W.3d 156, 160 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd).

We see nothing in this instruction that implies approval of the State's argument, indicates disbelief of the defense's position, or diminishes the credibility of the defense's approach to the case. Rather, it served to inform the jury that any offense that occurred on the date alleged in the second count of the indictment was not an extraneous offense and that the prior limiting instruction did not apply to it.

Moreover, if a trial judge makes an improper comment on the weight of the evidence, we must then decide if the comment was material, *i.e.*, if the jury was considering the same issue. *Id.* (citing *Simon v. State*, 203 S.W.3d 581, 592 (Tex. App.—Houston [14th Dist.] 2006, no pet.)). Only if the comment is material must

---

You are instructed that there is testimony before you in this case regarding the defendant having committed an act other than the offense alleged against him in the indictment in this case. This is called an extraneous act.

You cannot consider testimony of extraneous acts for any purposes unless you first find and believe beyond a reasonable doubt that the defendant committed any such extraneous acts and even then, you may only consider the same in determining the previous and subsequent relationship that existed between the defendant and the child, [V.R.], if any, and for no other purpose.

Appellant's only objection to the written charge was that the jury should not be charged on the second count because of a lack of evidence. He did not object to the written extraneous-offense portion of the charge, nor does he complain about the charge on appeal.

we determine whether it rises to the level of reversible error.  *See id.*  A material comment creates reversible error only when it is reasonably calculated to (a) benefit the State or (b) prejudice the defendant's right to a fair and impartial trial.  *Id.*

Here, appellant was specifically indicted for offenses occurring on or about August 22, August 31, and September 7, 2010.  Had the trial court not "amended" its limiting instruction, the jury could have considered the offense, if any, that occurred on August 31 as *both* an extraneous offense *and* a charged offense.  Accordingly, it does not appear that the trial court's instruction was reasonably calculated to benefit the State or prejudice the defendant's right to a fair and impartial trial.  Further, as noted above, the trial court's written charge to the jury properly set out the law on extraneous offenses.

Thus, even if the trial court's verbal instruction was improper, there was no reversible error.  Appellant's third issue is without merit, and we overrule it.

## CONCLUSION

Having overruled appellant's three issues, we affirm the trial court's judgment.


/s/    Sharon McCally
       Justice

Panel consists of Justices Christopher, McCally, and Brown.
Do Not Publish — Tex. R. App. P. 47.2(b).

14