In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-17-00433-CR**
_____

**CESAR ACOSTA, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court**
**Jefferson County, Texas**
**Trial Cause No. 16-25393**

**MEMORANDUM OPINION**

In nine issues on appeal, appellant Cesar Acosta argues that his conviction for intoxication assault should be reversed because he did not have notice of the State's intent to seek a deadly weapon finding, was not informed of his right to contact the Mexican Consulate, and because the trial court failed to appoint him an independent, licensed interpreter.[1] We affirm the trial court's judgment.

---

[1]We need not consider issues ten, eleven, and twelve because we granted Acosta's motion asking this Court not to consider his complaints concerning the ineffective assistance of his trial counsel.

1

BACKGROUND

A grand jury indicted Acosta for intoxication assault, a third-degree felony. The trial court's docket sheet indicates that Acosta is unable to speak English and only speaks Spanish. Acosta pleaded "guilty" to the offense without a plea bargain agreement, and the written plea admonishments indicate that Acosta stated that he is not a citizen of the United States. During the plea proceeding, the trial court asked Acosta if he spoke English, and Acosta responded, "I'm speak a little bit." At that point, the trial court advised Acosta that his attorney spoke English and Spanish and that if at any point Acosta needed to stop the proceeding to have things explained more clearly, the trial court would do so. The trial court assured Acosta that it wanted him to clearly understand the proceeding.

The trial court conducted a sentencing hearing, during which Acosta also stated that he was not a United States citizen. The trial court inquired if Acosta understood that his plea of guilty could result in his deportation and if Acosta had an opportunity to discuss the potential consequences of his plea with his attorney, and Acosta stated, "Yes, sir." The trial court also informed Acosta that he had an immigration customs enforcement hold on him and that the trial court presumed that Acosta would be deported after the case was completed, and Acosta responded, "Yes, sir." The trial court found that Acosta pleaded guilty voluntarily and

understood the consequences of his plea. The record shows that the trial court considered Acosta's criminal history and the extent of the victim's injuries in assessing Acosta's punishment at ten years of confinement. The trial court also found that Acosta had used a deadly weapon, which was a motor vehicle, during the commission of the offense.

## ANALYSIS

In issues one and two, Acosta complains that the State's failure to provide notice of its intent to seek an affirmative deadly weapon finding violated his due process under the Texas and United States Constitutions. *See* U.S. Const. amends. VI, XIV; Tex. Const. art. I, § 19. In issue three, Acosta argues that the deadly weapon finding should be deleted from the trial court's judgment because the trial court abused its discretion by hearing the State's deadly weapon allegation when notice was inadequate.

The indictment alleges that Acosta:

did then and there by accident and mistake while operating a motor vehicle in a public place while intoxicated and by reason of such intoxication cause serious bodily injury to another, namely: [N.K.], hereafter styled the complainant, by operating the said motor vehicle in the wrong lane of travel opposite to the designated direction of travel and colliding with the motor vehicle operated by the Complainant[.]

The State argues that the indictment gave Acosta adequate notice of its intent to seek an affirmative finding of a deadly weapon. The record shows that the trial court

3

entered a deadly weapon finding based on Acosta's guilty plea and his signed written plea admonishments, in which Acosta stipulated that he caused serious bodily injury with a motor vehicle due to his intoxication.

A defendant is entitled to notice of the State's intent to seek an affirmative deadly weapon finding. *Brooks v. State*, 847 S.W.2d 247, 248 (Tex. Crim. App. 1993). An affirmative deadly weapon finding can be made when the defendant is found guilty as charged in the indictment and the indictment alleges that the defendant caused death or serious bodily injury. *Crumpton v. State*, 301 S.W.3d 663, 664 (Tex. Crim. App. 2009); *see Blount v. State*, 257 S.W.3d 712, 714 (Tex. Crim. App. 2008). A deadly weapon is anything that in the manner of its use or intended use is capable of causing death or serious bodily injury. Tex. Penal Code Ann. § 1.07(a)(17)(B) (West Supp. 2017); *Sierra v. State*, 280 S.W.3d 250, 255 (Tex. Crim. App. 2009). "A motor vehicle, in the manner of its use or intended use, is clearly capable of causing death or serious bodily injury and therefore can be a deadly weapon." *Ex parte McKithan*, 838 S.W.2d 560, 561 (Tex. Crim. App. 1992).

The indictment in this case alleges, but does not specifically state, that the manner in which Acosta operated his motor vehicle caused it to become a deadly weapon. *See Mills v. State*, 541 S.W.3d 381, 387-88 (Tex. App.—Houston [14th Dist.] 2017, no pet.). Specifically, the indictment alleges that by reason of his

4

intoxication, Acosta drove his motor vehicle in the wrong lane of travel opposite to the designated direction of travel and collided into another vehicle, causing serious bodily injury to N.K. This language in the indictment necessarily includes an allegation that the motor vehicle was a deadly weapon because in the manner of its use, it was capable of causing serious bodily injury. *See Blount*, 257 S.W.3d at 714; *Mills*, 541 S.W.3d at 387. We conclude that the language in the indictment gave Acosta sufficient notice that the nature of the weapon alleged in the indictment would be an issue at trial and that the State might seek an affirmative finding on the use of the weapon. *See id.* Because Acosta pleaded guilty and stipulated that he caused serious bodily injury with a motor vehicle due to his intoxication and was found guilty on that basis, the trial court appropriately entered a deadly weapon finding. *See Mills*, 541 S.W.3d at 387-88. Accordingly, Acosta's due process rights were not infringed by the trial court's entry of a deadly weapon finding. *See id.* at 388. We overrule issues one, two, and three.

In issue four, Acosta argues that his conviction should be reversed because the trial court and his trial counsel failed to advise him of his right to contact the Mexican Consulate under the Vienna Convention. Article 36 of the Vienna Convention on Consular Relations "addresses communication between an individual and his consular officers when the individual is detained by authorities in a foreign

country." *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 337 (2006); *see also* Vienna Convention on Consular Relations, art. 36, Apr. 24, 1963, 21 U.S.T. 77, 595 U.N.T.S. 261. The Vienna Convention states that authorities must notify, without delay, the consular officers of the detainee's home country if the detainee so requests, and inform the detainee of his right to request assistance from the consul of his own state. *Sanchez-Llamas*, 548 U.S. at 338-39; *see Medellin v. Texas*, 552 U.S. 491, 499 (2008); *Sierra v. State*, 218 S.W.3d 85, 87 (Tex. Crim. App. 2007). Article 36 of the Vienna Convention does not guarantee any consular assistance, but only secures a right of foreign nationals to have their consulate informed of their arrest or detention. *Sanchez-Llamas*, 548 U.S. at 349. If the defendant raises a Vienna Convention violation, the trial court can make accommodations to ensure the benefits of consular assistance. *Id.* at 350; *see also Sierra*, 218 S.W.3d at 88.

The record shows that Acosta is not a citizen of the United States. The record further shows that Acosta failed to raise a complaint in the trial court regarding a violation of the Vienna Convention. Claims brought under Article 36 of the Vienna Convention are subject to procedural default rules. *See Sanchez-Llamas*, 548 U.S. at 360; *Ibarra v. State*, 11 S.W.3d 189, 197 (Tex. Crim. App. 1999). Because Acosta never raised this issue in the trial court, the rules of procedural default prevent him

6

from asserting it on appeal. *See Ibarra*, 11 S.W.3d at 197; *see also* Tex. R. App. P. 33.1(a). We overrule issue four.

In issues five through nine, Acosta complains that the trial court erred by failing to timely appoint an independent, licensed interpreter. Specifically, in issues five and six, Acosta argues that the trial court denied him a fair trial and violated his constitutional rights by failing to timely appoint a licensed interpreter to assist Acosta in understanding the evidence and available sentencing options, and to allow Acosta to assist his counsel. *See* U.S. Const. amends. VI, XIV; Tex. Const. art. I, § 10. In issues seven and eight, Acosta complains that the trial court failed to appoint an interpreter as required by the Texas Code of Criminal Procedure and the Texas Government Code. *See* Tex. Code Crim. Proc. Ann. art. 38.30(a) (West 2018); Tex. Gov't Code Ann. § 57.002 (West Supp. 2017). In issue nine, Acosta argues that the trial court erred by allowing him to proceed without the benefit of a licensed interpreter, which resulted in his inability to affirmatively waive his rights.

Under the United States and Texas Constitutions, a defendant has the constitutional right to be present at all stages of the trial, and presence requires comprehension of the criminal proceeding. *Joung Youn Kim v. State*, 331 S.W.3d 156, 162 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd); *see* U.S. Const. amend. VI; Tex. Const. art. I, § 10. A person who does not speak English has the right to the

assistance of an interpreter during trial proceedings, and a waiver of this right must be express. *Joung Youn Kim*, 331 S.W.3d at 162. A defendant's entitlement to enforce his right to the assistance of an interpreter may be contingent upon whether he requested a translator or upon a finding that the defendant does not understand or speak English. *Id.* at 163; *see* Tex. Code Crim. Proc. Ann. art. 38.30(a) (stating that defendant has a right to an interpreter upon either party's motion or the court's motion); Tex. Gov't Code Ann. § 57.002(a), (b) (stating that the trial court may appoint a certified or licensed interpreter on its own motion, but shall appoint an interpreter at the request of a party or witness). The determination of whether a defendant is in need of an interpreter lies within the trial court's discretion. *Linton v. State*, 275 S.W.3d 493, 502-03 (Tex. Crim. App. 2009); *Joung Youn Kim*, 331 S.W.3d at 162.

The right to an interpreter must be implemented by the system unless expressly waived by the defendant. *Garcia v. State*, 149 S.W.3d 135, 144 (Tex. Crim. App. 2004). When the trial court requests that trial counsel translate the criminal proceedings for the defendant and counsel does so, the question on appeal is not whether the trial court's failure to appoint an interpreter denied the defendant's rights; instead, the question is whether the failure to appoint an interpreter prevented the defendant from intelligently and voluntarily waiving his rights. *See Briones v.*

8

*State*, 595 S.W.2d 546, 547 (Tex. Crim. App. 1980). The trial court does not err by failing to appoint an interpreter when there is evidence showing that the defendant's counsel is capable of interpreting for the defendant. *Rivera v. State*, 981 S.W.2d 336, 338 (Tex. App.—Houston [14th Dist.] 1998, no pet.).

The record shows that the trial court was aware that Acosta is not a citizen of the United States and that Acosta spoke very little English. The record further shows that during the plea proceeding, the trial court advised Acosta that his counsel spoke English and Spanish and could explain the nature of the proceedings to Acosta. At that point, Acosta did not object to his counsel acting as an interpreter, and the record shows neither party requested that the trial court appoint an independent, certified interpreter. The record also shows that Acosta represented to the trial court that he had an opportunity to discuss the potential consequences of his guilty plea with his counsel and that he understood the consequences of his plea. During the entry of the plea, the trial court asked Acosta if he was entering his plea freely and voluntarily and if he was aware that he was giving up his right to a jury trial and his rights to appearance, confrontation, and cross-examination of witnesses. The trial court also advised Acosta concerning the consequences of his plea, including facing a term of two to ten years in prison and possible deportation.

The record reflects that the trial court took measures to insure that Acosta understood the rights he was giving up by pleading guilty, and that Acosta also understood the consequences of his guilty plea. Acosta represented to the trial court that he understood he was waiving his rights and the consequences of pleading guilty. At no point did Acosta complain that his counsel's interpreting was inadequate, nor did counsel alert the trial court that there was any difficulty in interpreting for Acosta. *See West v. State*, 406 S.W.3d 748, 763 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd). The record does not support Acosta's position that his counsel's alleged inadequacy as an interpreter violated his rights and led to a fundamentally unfair trial. *See id.* Based on this record, we conclude that the trial court did not abuse its discretion by allowing Acosta's counsel to act as an interpreter or by failing to appoint an independent, licensed interpreter. *See Briones*, 595 S.W.2d at 547-48; *West*, 406 S.W.3d at 763; *Rivera*, 981 S.W.2d at 338. We overrule issues five through nine. Having overruled issues one through nine and having granted Acosta's motion not to consider issues ten through twelve, we affirm the trial court's judgment.

AFFIRMED.

_____
STEVE McKEITHEN
Chief Justice

Submitted on April 30, 2018
Opinion Delivered July 11, 2018
Do Not Publish

Before McKeithen, C.J., Kreger and Johnson, JJ.