**Affirmed and Opinion filed January 8, 2013.**



In The

# Fourteenth Court of Appeals

### NO. 14-11-00685-CR

**MIGUEL ANGEL PARRA MORALES, Appellant,**

**V.**

**THE STATE OF TEXAS, Appellee.**

**On Appeal from the 506th District Court**
**Waller County**
**Trial Court Cause No. 13273**

## O P I N I O N

A jury found appellant Miguel Angel Parra Morales guilty of aggravated assault with a deadly weapon and assessed punishment of seven years' imprisonment, probated for five years, and a $5,000 fine. On appeal, Parra Morales raises three issues: (1) the trial court abused its discretion by admitting evidence of an extraneous offense; (2) the State failed to provide adequate notice of all records of conviction on which it intended to rely; and (3) the State violated Parra

Morales's right to remain silent by commenting twice on his failure to provide exculpatory evidence. We affirm.

I

Parra Morales and his girlfriend, Antonia Chavarria, were in a relationship for eight years and had three children together. In April 2009, Parra Morales and Chavarria were separated and Chavarria was living in her parents' home with the children. Parra Morales visited them regularly, however, and eventually Parra Morales and Chavarria decided to reconcile. On April 13, 2009, Parra Morales and Chavarria applied for a marriage license.

Around this same time, Chavarria was also having an affair with Jose Garcia, the complainant. On the evening of April 14, Parra Morales made phone calls to Chavarria and Garcia in which he threatened to harm or kill them if he found them together. Around noon the next day, April 15, Chavarria and Garcia were together at her parents' house with the children when Parra Morales arrived unexpectedly. Chavarria told Parra Morales to leave and called the police, but Parra Morales kicked in the front door and proceeded to search for Garcia.

Parra Morales found Garcia in one of the bedrooms and a fight ensued. During the struggle, Garcia hit Parra Morales in the head two or three times with an exercise weight and Parra Morales stabbed Garcia repeatedly with a knife. Parra Morales then fled before police and emergency services personnel arrived. Garcia, in serious condition, was airlifted to a hospital where he remained for four days. On July 28, 2009, Parra Morales was indicted and charged with aggravated assault with a deadly weapon. Parra Morales was not arrested until July 2010.

At trial, Parra Morales pleaded "not guilty" and testified that he stabbed Garcia in self-defense. He also denied making threatening calls to Chavarria and

Garcia the day before the assault. The jury rejected Parra Morales's defense and found him guilty of aggravated assault with a deadly weapon.

In the punishment phase of the trial, the prosecutor re-urged the evidence presented during the guilt-innocence phase and rested without calling any witnesses or offering any exhibits. Parra Morales's defense counsel then presented several witnesses, including Parra Morales's sister and mother, who testified concerning Parra Morales's good character and ability to follow the requirements of probation. On cross-examination, the trial court allowed the prosecutor to ask Parra Morales's mother several questions concerning whether she was aware of Parra Morales's other convictions or probations.[1] Defense counsel objected that the State had provided notice of only one prior conviction and he had not seen any other judgments of prior convictions. The trial court gave defense counsel a running objection to the introduction of extraneous offenses and allowed the prosecutor to question the witness for the limited purpose of impeaching her testimony.

In closing statements, defense counsel asked for probation and the prosecutor made no recommendation. The jury assessed Parra Morales's punishment at seven years' imprisonment in the Institutional Division of the Texas Department of Criminal Justice, probated for five years, and a $5,000 fine.

II

In his first issue, Parra Morales contends the trial court should have excluded Chavarria's testimony that Parra Morales called her the day before the incident and threatened to harm her if he found her and Garcia together. Parra Morales argues

---

[1] The prosecutor also attempted to ask Parra Morales's sister about Parra Morales's criminal history, but defense counsel objected on the grounds that he had been given no signed judgments, and the trial court sustained the objection. The prosecutor then concluded its cross-examination of this witness.

that the telephone threat was an extraneous offense, and not, as the prosecutor argued and the trial court concluded, same-transaction contextual evidence. In any event, Parra Morales maintains, the State used the testimony about his phone call to show character in conformity with a prior bad act and "there is nothing that makes the alleged call, of totally uncertain context, the day before, so intertwined with the aggravated assault."

We review a trial court's ruling on the admissibility of extraneous offenses under an abuse-of-discretion standard. *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009); *Prible v. State*, 175 S.W.3d 724, 731 (Tex. Crim. App. 2005). Under this standard, we are required to uphold the ruling when it is within the zone of reasonable disagreement. *De La Paz*, 279 S.W.3d at 343–44; *Prible*, 175 S.W.3d at 731.

Rule of Evidence 404(b) prohibits the use of evidence of a defendant's other bad acts or wrongs to prove the character of the defendant "in order to show action in conformity therewith." Tex. R. Evid. 404(b). However, evidence of extraneous offenses may be admitted for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *Id.* Evidence of another crime, wrong, or act also may be admissible as same-transaction contextual evidence when several crimes are intermixed, blended with one another, or connected so that they form an indivisible criminal transaction, and full proof by testimony of any one of them cannot be given without showing the others. *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011).

The purpose of admitting extraneous evidence as same-transaction contextual evidence is to place the instant offense in context. *Nguyen v. State*, 177 S.W.3d 659, 667 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd). "[I]t has long been the rule in this State that the jury is entitled to know all the relevant

4

surrounding facts and circumstances of the charged offense; an offense is not tried in a vacuum." *Moreno v. State*, 721 S.W.2d 295, 301 (Tex. Crim. App. 1986). Circumstances of the offense that tend to prove the allegations in the indictment are not extraneous offenses. *Camacho v. State*, 864 S.W.2d 524, 532 (Tex. Crim. App. 1993); *Ramirez v. State*, 815 S.W.2d 636, 643 (Tex. Crim. App. 1991). But same-transaction contextual evidence is admissible as an exception under Rule 404(b) only when the offense would make little or no sense without also bringing in that evidence, and only to the extent that it is necessary to the jury's understanding of the offense. *Devoe*, 354 S.W.3d at 469.

Chavarria testified that, before the incident, she and Parra Morales had been separated for about a month and she was seeing Garcia. On April 14, 2009, Parra Morales called her around 8:00 or 9:00 in the evening, and although she could not remember the exact words he used, Parra Morales threatened to kill her and Garcia if he found them together.[2] Less than sixteen hours later, Parra Morales found Chavarria with Garcia and assaulted Garcia with a knife. Parra Morales's telephone threat the day before places the assault in context and is necessary to the jury's understanding of Parra Morales's intent, state of mind, and motivation to forcibly enter Chavarria's house and repeatedly stab Garcia upon finding him there. The evidence also tended to rebut Parra Morales's self-defense theory. On this record, the trial court could have reasonably concluded that Chavarria's testimony constituted admissible same-transaction contextual evidence. *See De La Paz*, 279 S.W.3d at 343; *Wyatt v. State*, 23 S.W.3d 18, 26 (Tex. Crim. App. 2000); *Camacho*, 864 S.W.2d at 532. We overrule Parra Morales's first issue.

---

[2] Garcia also testified that Parra Morales called him around 9:30 p.m. the day before the assault and said that he "was going to kill" Garcia and Chavarria, but Parra Morales does not complain about the admission of Garcia's testimony.

## III

In his second issue, Parra Morales contends the State failed to provide notice under the trial court's "standard discovery order" as to "all records of conviction which may be admissible in evidence or used for impeachment of the defendant." Specifically, he complains that during the punishment phase of the trial, the prosecutor made multiple references to crimes that were never noticed or proven during cross-examination of Parra Morales's witnesses, and the prosecutor's references gave the jury the impression that Parra Morales had a long criminal history. Parra Morales complains that notice was required under Texas Code of Criminal Procedure article 37.07, section 3(g).

Texas Code of Criminal Procedure article 37.07 provides, in part, that upon a finding of guilt, either party may offer evidence "as to any matter" the trial court "deems relevant to sentencing." Tex. Code Crim. Proc. art. 37.07, § 3(a)(1). This evidence includes "the prior criminal record of the defendant, his general reputation, his character, an opinion regarding his character, the circumstances of the offense for which he is being tried," and "any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible." *Id.*

The attorney representing the State must give notice of the State's intent to introduce such evidence in the punishment phase if the defendant makes a timely request for the notice. *Id.* art. 37.07, § 3(g). This notice must be given to the same extent and in the same manner as is required under Texas Rule of Evidence 404(b) in the guilt-innocence phase. *Id.*; *see Worthy v. State*, 312 S.W.3d 34, 35 (Tex. Crim. App. 2010). Rule 404(b) provides that, in certain circumstances, evidence of other crimes, wrongs, or acts may be admissible "provided that upon timely

6

request by the accused in a criminal case, reasonable notice is given in advance of trial of intent to introduce *in the State's case-in-chief* such evidence other than that arising in the same transaction." Tex. R. Evid. 404(b) (emphasis added). Consequently, the Court of Criminal Appeals has held that the notice requirements of article 37.07, section 3(g), apply only to evidence presented during the State's case-in-chief, not during cross-examination or rebuttal. *See Jaubert v. State*, 74 S.W.3d 1, 4 (Tex. Crim. App. 2002).

Because the prosecutor rested his case in the punishment phase without referring to other convictions or wrongful acts, the State was not required to give Parra Morales notice of extraneous offenses referred to during cross-examination under article 37.07. *See id.* Therefore, the trial court did not err by allowing the prosecutor to impeach Parra Morales's witnesses concerning his good character and fitness for probation. We overrule Parra Morales's second issue.

IV

In his third issue, Parra Morales contends the trial court erred by failing to grant a mistrial when the State twice commented on Parra Morales's failure to provide exculpatory evidence to police, in violation of his constitutional right to remain silent. During the trial, the prosecutor asked an investigator with the Waller County Sheriff's Department about the lack of contact between police and Parra Morales before his arrest:

Q. [State]: Did you ever have an opportunity to talk to Parra Morales] at the scene of the - - of the assault?

A. [Witness]: No, sir.

Q. Why was that?

A. He was gone prior [to] my arrival.

. . .

Q. Investigator, is it your understanding that [Parra Morales] was

7

eventually apprehended?

A.     Yes, sir.

Q.     And do you know when that day was?

A.     Approximately July of 2010.

Q.     And that was, what, over a year after the assault we are talking about here?

A.     Yes.

Q.     Did you ever receive any - - anything from [Parra Morales] making an explanation or any - - any contact at all with him?

A.     No.

At that point, defense counsel objected that the prosecutor was commenting on Parra Morales's right to remain silent, and the trial court sustained the objection but denied defense counsel's motion for a mistrial.

Later, at closing arguments during the guilt-innocence phase, the following exchange occurred:

[State]:  It's very clear that Mr. Garcia was stabbed seven or eight times in the back. It is very clear also that he ran away. We're talking about [Parra Morales]. He ran away. Now, why does a person run away? There's all sorts of different reasons; but the big reason is you run away because you don't want to get caught. Okay? You run away because you have a guilty mind. You run away for all sorts of good reasons and sometimes those good reasons are you just don't want to be held accountable for your criminal conduct. That is the most likely reason under these circumstances.

Not only was he away just for a little bit -- and his explanation was interesting. "Well, you know, I was kind of -- kind of knocked out. I was kind of out of it for a week or ten days, probably -- Possibly, you know. So I really wasn't -- wasn't really dealing with that.

Now, I happen to get a family member to sew me back up or suture me back up; but -- you know, I was thinking pretty clearly along those lines. But I stayed away for another year because I was

trying to get legal counsel to help me out with my defense." Interestingly enough –

[Defense Counsel]: Your Honor, I object to the State's comment on his right against self-incrimination. He is commenting on a very -- and I object to it.

[The Court]: The jury will recall the evidence that was given at the stand. The State is entitled to make reasonable inferences. The jury will disregard any comment or inferences that the defendant was required to make a statement.

[Defense Counsel]: And I believe the Rules require, Judge, I move for a mistrial.

[The Court]: It is denied, sir.

Parra Morales argues that when the State uses a defendant's post-arrest silence to impeach his "exculpatory story" and directly links the implausibility of the exculpatory story to the defendant's ostensibly inconsistent act of remaining silent, "reversible error results even if the story is transparently frivolous." *See Franklin v. State*, 606 S.W.2d 818, 838 (Tex. Crim. App. 1979) (Phillips, J., dissenting) (quoting *Chapman v. United States*, 547 F.2d 1240, 1249 (5th Cir. 1977)) (internal quotation marks omitted). Parra Morales complains that although the trial court sustained his objections, the trial court reversibly erred when it denied his motion for mistrial because the prosecutor improperly referred to Parra Morales's post-arrest silence.

Reviewing the prosecutor's exchange with the investigator in context, it is apparent that the prosecutor was inquiring into any communications the investigator may have had with Parra Morales between the time of the assault and Parra Morales's arrest, and not "post-arrest" as Parra Morales contends. Here, the investigator merely confirmed that Parra Morales had fled the scene of the assault and police had no contact with him until his arrest over a year later. A fact finder may draw an inference of guilt from the circumstance of flight. *Clayton v. State*,

235 S.W.3d 772, 780 (Tex. Crim. App. 2007). The investigator also testified that he had no investigative responsibilities beyond the investigation at the scene and his attempts to contact Parra Morales. There was no evidence that the investigator was involved in Parra Morales's arrest or that he or any other officer attempted to interrogate Parra Morales after advising him of his *Miranda*[3] rights. Pre-arrest, pre-*Miranda* silence is not protected by the Fifth Amendment right against compelled self-incrimination, and prosecutors may comment on such silence regardless of whether a defendant testifies. *Salinas v. State*, 369 S.W.3d 176, 179 (Tex. Crim. App. 2012); *see also Jenkins v. Anderson*, 447 U.S. 231, 238–40 (1980) (holding that the use of pre-arrest silence can be used to impeach a defendant who testifies); *Waldo v. State*, 746 S.W.2d 750, 755 (Tex. Crim. App. 1988) ("Prearrest silence is a constitutionally permissible area of inquiry."). Therefore, the prosecutor's examination of this witness did not impermissibly infringe on Parra Morales's constitutional right to remain silent.

Further, Parra Morales testified in his defense that he did not stay at the scene of the assault because he was confused, scared, and injured, and he did not "get around" to hiring an attorney to help him because all of his money went to supporting his children. In the State's closing statement, the prosecutor countered Parra Morales's testimony by arguing that Parra Morales ran away because he knew he was guilty and did not want to be held accountable for his conduct. A prosecutor may argue reasonable deductions drawn from the evidence before the jury. *See Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000). At no time during his closing statement did the prosecutor refer to any post-arrest, post-*Miranda* silence. Therefore, we conclude that the prosecutor's argument did not constitute an impermissible comment on Parra Morales's right to remain silent, and

---

[3] *Miranda v. Arizona*, 384 U.S. 436, 444 (1966).

10

the trial court did not abuse its discretion in denying the motion for mistrial premised on this contention.

\* \* \*

We overrule Parra Morales's issues and affirm the trial court's judgment.


/s/    Jeffrey V. Brown
         Justice


Panel consists of Chief Justice Hedges and Justices Brown and Busby.

Publish — TEX. R. APP. P. 47.2(b).