**Affirmed and Memorandum Opinion filed January 23, 2014.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-12-00614-CR

---

**HERBERT GOLDSMITH, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 176th District Court
Harris County, Texas
Trial Court Cause No. 1277685**

---

## M E M O R A N D U M   O P I N I O N

Appellant Herbert Goldsmith was convicted of capital murder. In his first two issues on appeal, appellant claims that the trial court erred when it admitted evidence of appellant's flight from the police because (1) the evidence was not relevant and (2) the probative value of the evidence was substantially outweighed by the danger of unfair prejudice. In his third and final issue, appellant claims that the trial court erred when it refused to submit a jury instruction on the lesser-

included offense of aggravated assault. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Appellant was renting a house in northeast Houston, Harris County, Texas. Appellant sublet the house to the complainant, Christopher Jones, and two of the complainant's friends, Pishon Scott and Arnoldo Gomez. The complainant, Scott, and Gomez sold a variety of illegal narcotics from the location.

On September 10, 2010, appellant, complainant, Scott, Gomez, and Gomez's sister were at the house. While appellant and the complainant were doing push-ups, appellant received a phone call from Lance Burnley. Appellant invited Burnley to the house to buy cocaine, knowing that Burnley had expressed a desire to rob the complainant. Burnley and Gerald Porter, another of appellant's associates, arrived at the house shortly thereafter. Immediately after unlocking the front door for them and inviting them into the house, appellant turned to the others, picked up his gun, and said, "You all know what it is." Porter and Burnley followed appellant into the house, and the three of them—appellant, Porter, and Burnley—opened fire.

Gomez was shot nine times but survived. The complainant was shot four times and died from his wounds. Gomez's sister was not hurt. Scott managed to escape the house without injury when he recognized that the attackers had left the front door ajar and were not immediately concerned with him. After realizing that Scott had fled, appellant chased him and fired several shots during the pursuit, but Scott was not hit.

Appellant remained at large for several days. On September 14, 2010, the police determined that he was hiding at a motel with his girlfriend. The police obtained an arrest warrant and began surveillance of the area around the motel. Police officers involved in the surveillance operation decided to apprehend

2

appellant when he and his girlfriend took an Oldsmobile Alero belonging to the girlfriend's mother to a nearby restaurant for breakfast. The police officers tried to prevent appellant from leaving the parking lot by blocking the Alero with marked police cruisers. Appellant avoided the barricade and led the police on a high-speed chase during rush hour.

The chase resulted in the destruction of two vehicles. Appellant first crashed the Alero and tried to evade the police on foot. Appellant then stole a white Ford Escort from a bystander at an auto mechanic's shop and admitted to the bystander that he had shot someone. He continued to flee in the Escort until he crashed it and was finally arrested.

Appellant was indicted for the capital murder of the complainant and was convicted by a jury. Appellant timely appealed.

<h2 style="text-align:center">DISCUSSION</h2>

## I.     Evidence of Flight, Relevance

In his first issue, appellant argues that the trial court erred when it admitted the evidence of flight because his flight was unrelated to the crime charged and therefore irrelevant. We disagree.

We review the admission of evidence for an abuse of discretion and will uphold the trial court's ruling if it was within the zone of reasonable disagreement. *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000). "All relevant evidence is admissible, except as otherwise provided by Constitution, by statute, by these rules, or by other rules prescribed pursuant to statutory authority." Tex. R. Evid. 402. Evidence of flight or escape is relevant as a circumstance from which an inference of guilt may be drawn. *Bigby v. State*, 892 S.W.2d 864, 883 (Tex. Crim. App. 1994); *Valdez v. State*, 623 S.W.2d 317, 321 (Tex. Crim. App. 1979);

*Morales v. State*, 389 S.W.3d 915, 922 (Tex. App.—Houston [14th Dist.] 2013, no pet.); *Williams v. State*, 832 S.W.2d 152, 154 (Tex. App.—Houston [14th Dist.] 1992, pet. ref'd). Courts apply a two-step process when determining whether evidence of flight is admissible. First, the proponent must establish that the flight evidence is relevant to the crime under prosecution. *Bigby*, 892 S.W.2d at 883; *see, e.g.*, *Burks v. State*, 876 S.W.2d 877, 903–04 (Tex. Crim. App. 1994) (flight evidence was relevant when an arrest warrant for the offense under prosecution had been issued, defendant had already fled after committing the offense, and the police clearly identified themselves). Second, the defendant can have the evidence excluded by showing that the flight was unrelated to the charged offense. *See Burks*, 876 S.W.2d at 903. To accomplish this, the defendant must demonstrate (1) that his flight was directly connected to some other transaction and (2) that it was not connected to the offense at trial. *Bigby*, 892 S.W.2d at 883.

In this case, the State has established that the flight evidence is relevant to the capital murder. Appellant admitted to going on the run after the shooting. The police had a warrant to arrest appellant for capital murder. When the police tried to arrest appellant in a parking lot using marked vehicles, he led them on a high-speed chase. During the chase, appellant carjacked a bystander and admitted during the course of the carjacking that he had shot someone. This evidence is relevant to show appellant's consciousness of guilt. *See Burks v. State*, 227 S.W.3d 138, 148–49 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd).

Appellant argues, however, that he was not running because of the murder. Instead, appellant claims that he simply "continued running" from offenses unrelated to the murder. It is true that appellant failed to appear in Harris County court on charges of both forgery and discharge of a firearm in a metropolitan area and that he left Louisiana after being involved in the burglary of a pharmacy.

Although these incidents are evidence that appellant's flight was related to some other transaction, he did not present evidence that his flight was not connected to the capital murder. He has therefore failed to meet his burden to exclude the evidence of flight on relevance grounds, and we cannot say that the trial court abused its discretion. We overrule appellant's first issue.

## II.    Evidence of Flight, Rule 403 Balancing

In his second issue, appellant argues that even if the flight evidence was deemed relevant, the evidence was inadmissible because its probative value was substantially outweighed by the danger of unfair prejudice and confusion of the issues. We disagree.

A party can have relevant evidence excluded if its probative value is substantially outweighed by the danger of unfair prejudice or confusion of the issues. Tex. R. Evid. 403. "Probative value" refers to the "inherent probative force of an item of evidence—that is, how strongly it serves to make more or less probable the existence of a fact of consequence to the litigation—coupled with the proponent's need for that item of evidence." *Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007). "Unfair prejudice refers to an undue tendency to suggest decision on an improper basis, commonly . . . an emotional one." *Ex parte Rogers*, 369 S.W.3d 858, 863 (Tex. Crim. App. 2012) (internal quotation marks omitted).

We review the trial court's ruling for an abuse of discretion, and we should not reverse the trial court on a rule 403 basis if the ruling is within a zone of reasonable disagreement. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990); *see Bigby*, 892 S.W.2d at 883. In reviewing the trial court's decision to admit the evidence of flight, we should look at (1) the strength of the proponent's other evidence tending to show that the defendant committed the crime, taking into account the defendant's affirmative defenses; (2) the potential

for the evidence to impress the jury in some irrational but indelible way; (3) the proponent's need for the evidence; and (4) in determining the prejudicial effect of the evidence, the time needed to present the evidence. *See Bigby*, 892 S.W.2d at 883–84; *Dade v. State*, 956 S.W.2d 75, 80 (Tex. App.—Tyler 1997, pet. ref'd). If the flight evidence enhances the State's case, the trial court's ruling is probably within the zone of reasonable disagreement. *See, e.g.*, *Bigby*, 892 S.W.2d at 884 (trial court's ruling was within the zone of reasonable disagreement because evidence that defendant—who had pled insanity and did little to contest his guilt— threatened the trial judge with a gun and attempted to flee was highly probative of defendant's guilt and enhanced the state's case).

We must first determine whether the evidence of flight has probative value; that is, whether the evidence of flight makes it more or less probable that appellant murdered the complainant. Appellant admitted to fleeing after the murder. Beginning at a Denny's parking lot near his motel hideout, appellant led the police on a high-speed chase. During the course of the chase, appellant entered an auto-mechanic's shop, brandished his gun, and stole a Ford Escort. The victim of the theft testified that appellant "said he shot someone and he needed a car." The evidence of flight in this case is probative of appellant's consciousness of guilt and enhanced the State's case.

We now apply the factors listed above to determine whether the probative value is substantially outweighed by the danger of unfair prejudice. With regard to factor (1), the State presented other strong evidence against appellant. Specifically, Scott, an eyewitness who was at the house during the shooting, testified that appellant shot the complainant. Additionally, the State's ballistics analyst testified that the identifiable bullets recovered from the complainant's body were "consistent with the .40 caliber family," and another eyewitness testified that

appellant typically carried a .40 or .45 caliber gun.

With regard to factor (2), the evidence of flight did not have a tendency to influence the jury in an indelible or irrational way when compared with other evidence presented by the State. *See, e.g.*, *Sanders v. State*, 255 S.W.3d 754, 761 (Tex. App.—Fort Worth 2008, pet. ref'd) (testimony about a third party's sexual assault of the victim was not unfairly prejudicial when compared with testimony about defendant's repeated sexual assaults). For instance, the jury saw photographs of the victim's autopsy, including close-ups of the gunshot wounds. The jury heard testimony about the effect the bullets would have had on the complainant's internal organs. In comparison to the inherently graphic testimony given by the medical examiner, we think that the evidence of flight had little tendency to influence the jury in an irrational way.

With regard to factor (3), the State needed to introduce the evidence of flight. As a general rule, "the State is entitled to show circumstances surrounding arrest." *Cantrell v. State*, 731 S.W.2d 84, 92 (Tex. Crim. App. 1987) (quoting *Maddox v. State*, 682 S.W.2d 563, 564 (Tex. Crim. App. 1985)); *e.g.*, *Burks*, 227 S.W.3d at 148–49 (evidence of defendant's flight was admissible to show consciousness of guilt when defendant fled from officer who was wearing a jacket marked "POLICE" and defendant was aware of the officer's motive to arrest him). Not only does the evidence of flight in this case show appellant's consciousness of guilt and the circumstances of his arrest, it led to the discovery of, and provided a foundation for admitting, other items of evidence, such as weapons, bullets, and drugs, which were used at trial. Additionally, we note that the trial court gave the jury a limiting instruction regarding the extraneous offenses that appellant committed during the course of his flight.

Finally, with regard to factor (4), the State did not need an excessive amount of time to present the evidence of flight. We examined an eighteen volume reporter's record containing a transcription of over 3,000 pages of testimony, motion practice, argument, and evidence. The presentation of the evidence of flight occupied only a small fraction of that record.

After reviewing the facts and applying the factors noted above, we conclude that the trial court did not abuse its discretion in concluding that the danger of unfair prejudice did not substantially outweigh the probative value of the evidence of flight. Appellant's second issue is overruled.

## III.   Lesser-Included Offense Jury Instruction

In his third issue, appellant argues that the trial court erred when it refused to submit a jury instruction on the lesser-included offense of aggravated assault. The State, on the other hand, argues that appellant waived his objection because appellant (1) did not properly dictate his request to the trial court, (2) did not adequately specify the nature of the underlying assault in his request, and (3) did not properly comport his argument at trial with his argument on appeal. We assume, without deciding, that appellant preserved error and conclude that because aggravated assault is not a lesser-included offense to the capital murder in this case, appellant was not entitled to a jury instruction on aggravated assault.

Whether aggravated assault is a lesser-included offense to capital murder is determined by applying article 37.09 of the Code of Criminal Procedure, which provides:

An offense is a lesser included offense if:

(1) it is established by proof of the same or less than all the facts required to establish the commission of the offense charged;

(2) it differs from the offense charged only in the respect that a less

8

serious injury or risk of injury to the same person, property, or public interest suffices to establish its commission;

(3) it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission; or

(4) it consists of an attempt to commit the offense charged or an otherwise included offense.

Tex. Code Crim. Proc. Ann. art. 37.09 (West 2006). Although aggravated assault can be a lesser-included offense to capital murder under certain circumstances, we must apply a two-step analysis to determine whether the trial court erred in refusing to submit a jury instruction on a lesser-included offense. *Segundo v. State*, 270 S.W.3d 79, 90 (Tex. Crim. App. 2008); *Cannon v. State*, 401 S.W.3d 907, 910 (Tex. App—Houston [14th Dist.] 2013, pet. ref'd); *see Cardenas v. State*, 30 S.W.3d 384, 392 (Tex. Crim. App. 2000) (acknowledging aggravated assault as a potential lesser-included offense to capital murder). First, we compare the elements of the greater offense as pleaded in the indictment with the statutory elements of the lesser offense to determine whether the lesser offense is actually a lesser-included offense. *Segundo*, 270 S.W.3d at 90. If the elements of the lesser offense cannot be established by proof of the same or less than all the facts required to establish the commission of the charged offense, then the lesser offense is not a lesser-included offense, and we can stop our inquiry. *See Hall v. State*, 225 S.W.3d 524, 536–37 (Tex. Crim. App. 2007). This first step is a question of law and does not require an examination of the evidence to be produced at trial. *Wortham v. State*, 412 S.W.3d 552, 555 (Tex. Crim. App. 2013); *Hall*, 225 S.W.3d at 535.

Second, if we decide that the lesser offense is a lesser-included offense, we must determine whether the record contains some evidence "from which a rational jury could acquit the defendant of the greater offense while convicting him of the lesser-included offense." *Segundo*, 270 S.W.3d at 90–91. The lesser-included

9

offense must be a valid rational alternative to the charged offense. *Wortham*, 412 S.W.3d at 557; *Segundo*, 270 S.W.3d at 91. There must be more than a scintilla of evidence directly germane to the lesser-included offense before an instruction on the lesser-included offense is warranted. *Wortham*, 412 S.W.3d at 557–58. We cannot consider the credibility of the evidence. *Id.* at 558. Weak or contradicted evidence may be enough for the jury to convict the defendant of only the lesser-included offense. *Id.* But the evidence must be more than mere speculation; it must "consist of affirmative evidence that both raises the lesser-included offense and rebuts or negates an element of the greater offense." *Id.*

We begin the first step of the analysis by considering the statutory elements of capital murder as modified by the allegations in the indictment. The indictment alleged the following statutory elements of capital murder:

(1) Appellant

(2) Intentionally

(3) Caused the death of the complainant

(4) By shooting the complainant with a firearm

(5) While committing or attempting to commit robbery against the complainant.

*See* Tex. Penal Code Ann. § 19.03(a)(2) (West Supp. 2013). Next, we compare these elements with the statutory elements of the requested lesser offense of aggravated assault.[1] At trial, appellant argued that the evidence only showed that

---

[1] Assault can be committed in three possible ways. A person can commit assault by (1) intentionally, knowingly, or recklessly causing bodily injury to another; (2) intentionally or knowingly threatening another with imminent bodily injury; or (3) intentionally or knowingly causing physical contact with another with actual or constructive knowledge that the other would regard the contact as offensive. Tex. Penal Code Ann. § 22.01(a) (West Supp. 2013). An assault becomes aggravated assault if the person commits the assault and either (1) causes another person serious bodily injury or (2) uses or exhibits a deadly weapon during the assault. *Id.* § 22.02(a) (West 2011).

the complainant "got up and took off running and . . . maybe [appellant] fired in the direction of him."[2] Because appellant's argument at trial did not allege that appellant caused bodily injury or that appellant caused offensive physical contact, we will analyze whether appellant was entitled to a jury instruction on the lesser offense of aggravated assault by threat. *See id.* § 22.01(a)(2) (West Supp. 2013). The elements of aggravated assault by threat are as follows:

(1) Person [Appellant]

(2) Intentionally or knowingly

(3) Threatened another with imminent bodily injury

(4) While using or exhibiting a deadly weapon.

*Id.* §§ 22.01(a)(2), 22.02(a)(2) (West 2011 & Supp. 2013). Now, we must determine whether the elements of aggravated assault by threat could be established by proof of the same or less than all the facts required to prove the indictment for capital murder. *Hall*, 225 S.W.3d at 536. Here, the State was not required to prove that appellant threatened the complainant in order to prove that appellant committed the capital murder. *See, e.g., id.* at 536–37 (aggravated assault by threat was not a lesser included offense to murder because the State was not required to prove threatening or display). Therefore, we hold that aggravated assault by threat is not a lesser-included offense in this case as a matter of law. We overrule appellant's third issue.

---

[2] Appellant argues on appeal that his only participatory act was shooting two or three times in the air outside the house to make it appear that he was on the side of the armed intruders. This act was not assault; rather, it may have been disorderly conduct or illegal discharge of a firearm. *See id.* §§ 42.01(a)(7)–(9), 42.12(a) (West 2011 & Supp. 2013).

## CONCLUSION

For the reasons stated above, the judgment of the trial court is affirmed.


/s/    Marc W. Brown
Justice

Panel consists of Justices Christopher, Donovan, and Brown.

Do Not Publish — TEX. R. APP. P. 47.2(b).