**Opinion filed July 31, 2014**



In The

# Eleventh Court of Appeals

_____

## No. 11-12-00103-CR

_____

## ROBERT LARRY WILLIAMS, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 32nd District Court**

**Nolan County, Texas**

**Trial Court Cause No. 11,177**

## MEMORANDUM OPINION

Robert Larry Williams appeals his conviction for engaging in organized criminal activity. *See* TEX. PENAL CODE ANN. § 71.02(a)(5) (West Supp. 2013). After finding two enhancement paragraphs "true," the jury assessed Appellant's punishment at confinement in the Institutional Division of the Texas Department of Criminal Justice for a term of life and a fine of $10,000. In three issues on appeal,

Appellant argues that (1) the evidence was insufficient to sustain his conviction; (2) the affidavit in support of the search warrant of his residence did not contain probable cause sufficient for the issuance of the warrant; and (3) the trial court improperly commented on the evidence presented at trial. We affirm.

*Background Facts*

Appellant was charged by indictment with the offense of engaging in organized criminal activity. The indictment alleged that on or about October 6, 2010, Appellant knowingly possessed, with the intent to deliver, a controlled substance—namely cocaine, in an amount of four grams or more but less than 200 grams, and that he committed such offense with the intent to establish, maintain, or participate in a combination or in the profits of a combination who collaborated in carrying on said criminal activity.

Before the start of trial, Appellant filed motions to suppress the results of a search of his residence and the contents of cell phones found there. After a hearing on the motions, the trial court granted the motion relating to the contents of the cell phones. The court denied the motion concerning the results of the search of Appellant's residence but ordered the State to disclose the names of the anonymous sources it used in securing the warrant. The case proceeded to trial upon Appellant's plea of "not guilty."

Tim Blount, an investigator with the Nolan County Sheriff's Office, testified that his investigation of Appellant's residence located in Sweetwater began after he received information that narcotics were being sold there. After conducting surveillance on the house, Officer Blount orchestrated several controlled narcotics purchases at the location using an informant named Marcus Caballero. Officer Blount stated that Caballero bought $200.00 worth of crack cocaine at the residence under the supervision of Abilene Police Officer Susan Belver on August 2, 2010, August 23, 2010, and September 20, 2010.

2

Officer Blount implemented electronic surveillance on the residence on August 31, 2010, and the surveillance continued until October 6, 2010. A condensed version of the footage obtained from the surveillance was played for the jury, and Officer Blount testified that the footage showed activity consistent with drug dealing. The footage reveals that, on numerous times each day, a car pulled up to the house and a person briefly went inside or a quick hand-to-hand transaction occurred outside before the person got back in his or her car and drove away.

While observing the residence, Officer Blount witnessed an individual named Eddie Presley making frequent stops at the house. On October 5, 2010, Officer Blount followed Presley from Appellant's residence to Presley's residence. After Officer Blount confronted Presley about his interaction with Appellant, Presley surrendered $40.00 worth of crack cocaine that he admitted to having just purchased from Appellant.

Based on the controlled buys, the electronic surveillance, and the information provided by Presley, Officer Blount obtained a warrant to search Appellant's residence. Officers executed the warrant at the residence on October 6, 2010. The search uncovered varying amounts of marihuana and approximately 4.93 grams of cocaine along with a razor blade with traces of cocaine on it. The amount of $1,939.00 in cash was also found inside Appellant's wallet.

Caballero testified that he was in risk of having his probation revoked on a theft-by-check charge when he agreed to be an informant in this case. Caballero explained that he secretly recorded each controlled buy that he performed, and this footage was played for the jury.

Caballero made his first controlled purchase of crack cocaine on the front porch of Appellant's residence on August 2, 2010. Caballero bought the cocaine from Cory Alldredge and Appellant's daughter, Shinice Black. The video of the

3

buy shows that when Caballero asked Black if everyone at the house sold the same type of crack cocaine, Black stated that they all had "the same [product]". Appellant was also present during the buy and Caballero identified him in the video as the individual who asked him "who you getting all that dope for right there?"

Caballero made his second controlled purchase of crack cocaine inside the residence on August 23, 2010. Caballero testified that he bought the cocaine from Appellant and his nephew, Jerome Williams. In the video of the purchase, Appellant and his nephew can be heard fighting over which one of them would sell to Caballero. Appellant's nephew can also be seen sorting the cocaine before giving it to Caballero.

Caballero made his third controlled purchase of crack cocaine inside the residence from Jerry Washington on September 20, 2010. Caballero noted that Appellant was present for this purchase as well. In the video of the purchase, Caballero can be heard greeting Appellant after he enters the house.

Eddie Presley testified that he purchased $40.00 worth of cocaine from Appellant at the residence on October 5, 2010. Presley also stated that he had bought cocaine from Appellant and others at the house several times in the past.

Crystal Parker, an ex-girlfriend of Appellant's cousin, testified that she witnessed drug transactions at the residence and that she saw Appellant divide cocaine with other members of the household. Parker further stated that Appellant lived at the house and that she believed he was the head of the household.

The jury ultimately found Appellant guilty of the offense of engaging in organized criminal activity. After finding two enhancement paragraphs to be true, the jury assessed Appellant's punishment at confinement for a term of life and a fine of $10,000.

*Sufficiency of the Evidence*

In his third issue, Appellant challenges the sufficiency of the evidence to support his conviction. We review a sufficiency of the evidence issue, regardless of whether it is denominated as a legal or factual claim, under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). In conducting a sufficiency review, we defer to the jury's role as the sole judge of the witnesses' credibility and the weight their testimony is to be afforded. *Brooks*, 323 S.W.3d at 899. This standard accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the prosecution and defer to that determination. *Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778.

As noted previously, the indictment alleged that on or about October 6, 2010, Appellant knowingly possessed, with the intent to deliver, four grams or more of cocaine. When executing the search warrant on Appellant's residence on October 6, 2010, officers recovered approximately 4.93 grams of cocaine from inside of a recliner on the porch of the residence and from inside of a van parked at the residence. Appellant alleges that the evidence did not sufficiently link him to the cocaine recovered by the officers. He additionally alleges that the evidence did

not establish an intent to deliver on his part or his participation in a combination to carry out the criminal activity.

To prove unlawful possession of a controlled substance, the State must show (1) that the accused exercised control, management, or care over the substance, and (2) that the accused knew the matter possessed was contraband. *Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005). When the accused is not in exclusive possession of the place where the contraband is found, the State must show additional affirmative links between the accused and the contraband. *See Olivarez v. State*, 171 S.W.3d 283, 291 (Tex. App.—Houston [14th Dist.] 2005, no pet.). An affirmative link generates a reasonable inference that the accused knew of the contraband's existence and exercised control over it. *See id.* The "affirmative links rule" is designed to protect the innocent bystander from conviction based solely on fortuitous proximity to someone else's drugs. *Poindexter*, 153 S.W.3d at 406. Thus, when the accused is not in exclusive possession of the place where the substance is found, there must be additional independent facts and circumstances that affirmatively link the accused to the contraband. *Id.*

Courts have identified the following factors as affirmative links that may establish an accused's knowing possession of a controlled substance:

> (1) the accused's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the accused's proximity to, and the accessibility of, the contraband; (4) whether the accused was under the influence of narcotics when arrested; (5) whether the accused possessed narcotics or other contraband when arrested; (6) whether the accused made incriminating statements when arrested; (7) whether the accused attempted to flee; (8) whether the accused made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the accused owned or had the right to possess the place where the contraband was found; (12) whether the place where the

6

contraband was found was enclosed; (13) whether the accused was found with a large amount of cash; and (14) whether the conduct of the accused indicated a consciousness of guilt.

*Evans v. State*, 202 S.W.3d 158, 162 n.12 (Tex. Crim. App. 2006). It is the logical force of such links, rather than mere quantity, that is important in determining whether the evidence is sufficient to connect the accused to the alleged contraband. *Id.* at 162. The list of affirmative links is not exclusive. *Id.* Appellate courts do not balance the absent affirmative links against the affirmative links that are present. *See Wiley v. State*, 388 S.W.3d 807, 814 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd). In other words, the absence of various affirmative links is not evidence of innocence. *Id.*

The evidence shows that Appellant lived at the residence and frequently drove the vehicle from which the cocaine was recovered. He was present at the residence on the porch when the search was conducted, and he recently occupied the van prior to the execution of the search warrant. He also had a large amount of cash in his wallet at the time of the search. He was present when previous drug transactions occurred, and he directly participated in the delivery of cocaine to Presley on the day preceding the search. These facts provided sufficient affirmative links for a rational jury to determine beyond a reasonable doubt that Appellant knowingly possessed the cocaine found at his residence and in his van.

We also conclude that there was sufficient evidence to establish Appellant's intent to deliver. "Deliver" means to transfer, actually or constructively, a controlled substance to another. TEX. HEALTH & SAFETY CODE ANN. § 481.002(8) (West Supp. 2013). As noted previously, the State offered evidence that Appellant directly participated in the delivery of cocaine, including the day preceding the execution of the search warrant. A rational juror could have concluded beyond a reasonable doubt that Appellant possessed the seized cocaine for the purpose of

future deliveries. Additionally, Appellant's possession of a large amount of cash and the lack of drug paraphernalia for personal use of cocaine are items of circumstantial evidence supporting an intent to deliver. *See Moreno v. State*, 195 S.W.3d 321, 325 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd).

Finally, a person engages in organized criminal activity "if, with the intent to establish, maintain, or participate in a combination or in the profits of a combination . . . [he] commits or conspires to commit one or more [enumerated offenses]." PENAL § 71.02; *see Hart v. State*, 89 S.W.3d 61, 63 (Tex. Crim. App. 2002). The term "combination" means "three or more persons who collaborate in carrying on criminal activities." PENAL § 71.01(a) (West 2011). To establish participation in a combination, the State must prove "that the appellant intended to 'establish, maintain, or participate in' a group of three or more, in which the members intend to work together in a continuing course of criminal activities." *Nguyen v. State*, 1 S.W.3d 694, 697 (Tex. Crim. App. 1999). Direct evidence of the intent to participate in a combination is not required. *McGee v. State*, 909 S.W.2d 516, 518 (Tex. App.—Tyler 1995, pet. ref'd). It is permissible to infer an agreement among a group working on a common project when each person's action is consistent with realizing the common goal. *Id.*

Officer Blount testified that he witnessed drug transactions at Appellant's residence over the course of more than a month and stated that electronic surveillance of the house showed activity consistent with drug dealing. Caballero testified that Appellant and at least four other people sold him cocaine at the house and video of these purchases was played for the jury. Presley testified that he bought crack cocaine from Appellant and others at the house many times, including the day he surrendered two rocks of crack cocaine to Officer Blount. Parker testified that she witnessed drug transactions at the house and that she saw Appellant divide cocaine with other members of the household. Additionally,

officers found a large amounts of cash in Appellant's wallet and large amounts of shoes and caps were found inside of Appellant's room in the residence. Officer Blount testified that Appellant did not appear to have a job outside of the home.

Viewed in the light most favorable to the conviction, we find that there was sufficient evidence for a rational trier of fact to have found all of the elements of engaging in organized criminal activity beyond a reasonable doubt. The evidence established that Appellant and at least four others were part of a combination that distributed crack cocaine for profit. We overrule Appellant's third issue.

*Search Warrant Affidavit*

In his first issue, Appellant contends that Officer Blount's probable cause affidavit provided in support of the search warrant did not set out sufficient probable cause for the issuance of the warrant. He contends that the affidavit was conclusory and misleading. Appellant further contends that the affidavit failed to establish the credibility of the informants used in this case and contained stale information.

The Fourth Amendment to the United States Constitution mandates that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV. A magistrate judge cannot issue a search warrant without first finding probable cause that a particular item will be found in a particular location. *Rodriguez v. State*, 232 S.W.3d 55, 60 (Tex. Crim. App. 2007). An application for a search warrant must be supported by an affidavit setting forth facts establishing probable cause. TEX. CODE CRIM. PROC. ANN. art. 1.06 (West 2005), art. 18.01(b) (West Supp. 2013). Probable cause exists when, under the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found at the specified location. *State v. McLain*, 337 S.W.3d 268, 272 (Tex. Crim. App. 2011). The test for finding probable cause is "whether a

reasonable reading by the magistrate would lead to the conclusion that the affidavit provided a 'substantial basis for the issuance of the warrant[,]' thus, '[t]he magistrate's sole concern should be probability.'" *Rodriguez*, 232 S.W.3d at 60 (alterations in original, footnote omitted). This is a "'flexible and nondemanding' standard." *Id.*

We review a trial court's ruling on a motion to suppress by using a bifurcated standard of review, giving almost total deference to the historical facts found by the trial court and reviewing de novo the trial court's application of the law. *McLain*, 337 S.W.3d at 271; *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007). However, when the trial court determines whether there is probable cause to support the issuance of a search warrant, there are no credibility determinations; rather, the trial court is constrained to the four corners of the probable cause affidavit. *McLain*, 337 S.W.3d at 271; *Hankins v. State*, 132 S.W.3d 380, 388 (Tex. Crim. App. 2004). Accordingly, when we review the magistrate's decision to issue a warrant, we apply a highly deferential standard because of the constitutional preference for searches to be conducted pursuant to a warrant as opposed to a warrantless search. *McLain*, 337 S.W.3d at 271; *Swearingen v. State*, 143 S.W.3d 808, 810–11 (Tex. Crim. App. 2004) (citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). As long as the magistrate had a substantial basis for concluding that probable cause existed, we will uphold the magistrate's probable cause determination. *Gates*, 462 U.S. at 236; *McLain*, 337 S.W.3d at 271. We are instructed not to analyze the affidavit in a hyper-technical manner. *Gates*, 462 U.S. at 236; *McLain*, 337 S.W.3d at 271. "[W]hen an appellate court reviews an issuing magistrate's determination, that court should interpret the affidavit in a commonsensical and realistic manner, recognizing that the magistrate may draw reasonable inferences. When in doubt, we defer to all

10

reasonable inferences that the magistrate could have made." *McLain*, 337 S.W.3d at 271; *Rodriguez*, 232 S.W.3d at 61.

Officer Blount's probable cause affidavit provided in relevant part as follows:

On August 2, 2010, your Affiant conducted a control delivery of crack cocaine from the suspected place[1] where a quantity of crack cocaine was purchased from Shinice Fontellarene Black and Cory Alan Alldredge.

On August 23, 2010, your Affiant conducted a control delivery of crack cocaine from the suspected place where a quantity of crack cocaine was purchased from [Appellant] and Jerome Eugene Williams.

The suspected place has been under electronic surveillance since August 31, 2010, and your Affiant has observed numerous vehicles and persons arriving at the suspected place and only staying for short periods of time which is an indication of a drug transaction. Your Affiant has also observed different people selling illegal narcotics; namely crack cocaine from the suspected place while your Affiant was conducting visual surveillance on the suspect location.

On September 20, 2010, your Affiant conducted a control delivery of crack cocaine from the suspected place where a quantity of crack cocaine was purchased from Jerry DeWitt Washington, Jr.

On October 5, 2010, 32nd Judicial District Attorney's Office Investigator Billy Sides and your Affiant were conducting surveillance at the suspected place, and observed a known narcotics user approach the suspected place. Due to the safety of the known narcotic user, it is requested that the name stay anonymous. The Anonymous person approached the suspected place and was at the suspected place for less than five minutes. The known user then left the suspected place. When the Anonymous person stopped at the known user's residence Investigator Sides and your Affiant made contact with the Anonymous person, and the Anonymous person self surrendered two crack rocks and stated the two crack rocks were purchased from the suspected place at 1110 Runnels Street in Sweetwater, Texas. The suspected crack cocaine

---

[1]The affidavit contained a detailed description of the "suspected place."

was field tested and tested positive for cocaine. The field weight of the cocaine was approximately .3 grams. The Anonymous person freely drove to the District Attorney's Office and gave a written statement to the fact that he/she had indeed purchased the two rocks of crack cocaine for $40.00 from a person know to him/her as Duna ([Appellant]) from the house on Runnels Street. The Anonymous person requested to remain anonymous due to his/her fear that he/she would be hurt by the drug dealers. The Anonymous person stated that he/she had purchased rock cocaine from the suspect location at least thirty times in the past and that he/she had bought from [Appellant], Ashley Regalado, Jerome Williams and Jerry (Tojo) Washington.

Appellant challenges the probable cause affidavit in a divide-and-conquer manner by parsing each paragraph and attacking them individually. This approach is inconsistent with the prohibition against reading the affidavit in a hyper-technical manner. *Gates*, 462 U.S. at 236; *McLain*, 337 S.W.3d at 271. Instead, we are required to review the affidavit from a totality-of-the-circumstances perspective. *McLain*, 337 S.W.3d at 272.

We begin our analysis with the paragraph detailing the events occurring on October 5, 2010, at Appellant's residence. This date is significant because it is the same date that Officer Blount signed the affidavit and it is also the same date that the magistrate issued the search warrant. Additionally, the officers served the warrant on the following morning. The description of the events occurring on October 5 reveals that a "known narcotics user" purchased cocaine from Appellant's residence while under police supervision and that he produced the cocaine he purchased from Appellant when intercepted by officers. This person then provided a written statement detailing that he had purchased cocaine from Appellant's residence at least thirty times in the past.

We conclude that the details provided in the warrant about the purchaser's activities on October 5 provided the magistrate with sufficient probable cause to conclude that there was a fair probability that contraband or evidence of a crime

would be found at Appellant's house. The details provided in the preceding paragraphs indicated that drugs had been sold from the residence on a continuous basis for a number of weeks and served as an indication that drugs would be present there after October 5.[2] We overrule Appellant's first issue.

*Comment on the Weight of the Evidence*

In his second issue, Appellant argues that the trial court improperly commented on the weight of the evidence when State's Exhibit No. 5 was admitted into evidence. This exhibit consisted of video footage of Caballero's controlled buy occurring on August 23, 2010. After the State offered the video into evidence, the following exchange took place between Appellant's counsel and the trial court:

> [Appellant's Counsel]: Judge, I've seen Exhibit 5 and reviewed it with my client. And our objections, I believe this is of an incident that occurred August 23rd of 2010. Judge, that's not the charge that we're charged with. We object to it. It's extraneous evidence under 404(b). It should be refused. And it also lacks relevancy.
>
> THE COURT: Overruled as to relevancy. In as much as the charge is engaging in organized criminal activity, the Defendant had notice of these various other dates. I find this to be part of the same transactions that constitute the charge the State is attempting to prove. The objection is overruled and State's 5 is admitted.
>
> (State's Exhibit 5 admitted.)
>
> [Prosecutor]: Judge, may I publish State's 5 to the jury?
>
> THE COURT: Yes.
>
> [Appellant's Counsel]: And, Judge, just one last thing. Sorry to interrupt you. You said you find it's part of the same transactions, and

---

[2]Appellant contends that the information pertaining to the transactions occurring August 2, 2010, August 23, 2010, and September 20, 2010, should be disregarded because it was stale. We disagree. While the passage of time is one factor that should be considered when determining if the information in an affidavit is stale, the amount of time passed is less significant if the affidavit contains facts showing "activity of a protracted and continuous nature, i.e., a course of conduct." *Kennedy v. State*, 338 S.W.3d 84, 93 (Tex. App.—Austin 2011, no pet.).

13

we would object to that as a statement on the evidence and ask that you instruct the jury not to consider that.

THE COURT: Objection is overruled.

Appellant contends that the trial court's comment indicated a disbelief in his position and implied approval and support of the State's position.

In ruling upon the admissibility of evidence, the judge shall not discuss or comment upon the weight of the same or its bearing in the case, but shall simply decide whether or not it is admissible; nor shall he, at any stage of the proceeding previous to the return of the verdict, make any remark calculated to convey to the jury his opinion of the case. CRIM. PROC. art. 38.05 (West 1979). A trial court must refrain from making any remark calculated to convey to the jury its opinion of the case. *Brown v. State*, 122 S.W.3d 794, 798 (Tex. Crim. App. 2003). In *Brown*, the Court of Criminal Appeals explained the rationale for this rule, stating:

> [J]urors are prone to seize with alacrity upon any conduct or language of the trial judge which they may interpret as shedding light upon his view of the weight of the evidence, or the merits of the issues involved.

*Id.*

The trial court improperly comments on the weight of the evidence if it makes a statement that implies approval of the State's argument, indicates disbelief in the defense's position, or diminishes the credibility of the defense's approach to the case. *See Joung Youn Kim v. State*, 331 S.W.3d 156, 160 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd). If a trial judge makes an improper comment on the weight of the evidence, we must then decide if the comment was material, i.e., if the jury was considering the same issue. *Id.* (*citing Simon v. State*, 203 S.W.3d 581, 592 (Tex. App.—Houston [14th Dist.] 2006, no pet.)). Only if the comment is material must we determine whether it rises to the level of reversible error. *See id.*

We conclude that the trial court's statement constituted an improper comment on the weight of the evidence because it indicated the trial court's disagreement with Appellant's position. Furthermore, the comment rose to the level of being "material" because it addressed a matter that the State was "attempting to prove" as noted by the trial court when making the comment. In reaching this determination, it certainly does not appear that the trial court was attempting to *sua sponte* interject an extraneous opinion about the evidence before the jury. Instead, the trial court was simply explaining its ruling in response to Appellant's specific objection. However, the trial court's motive in commenting on the evidence is not relevant to our analysis. *Simon*, 203 S.W.3d at 591–92. Accordingly, we must determine if the trial court's comment constituted reversible error.

A trial court's material and improper comment on the weight of the evidence is a statutory violation subject to the non-constitutional error standard set out in TEX. R. APP. P. 44.2(b). *Simon*, 203 S.W.3d at 593. In applying Rule 44.2(b), an appellate court must disregard non-constitutional error unless it affects the appellant's substantial rights. *Barshaw v. State*, 342 S.W.3d 91, 93 (Tex. Crim. App. 2011). An appellate court should not overturn a criminal conviction for non-constitutional error "if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or influenced the jury only slightly." *Id*.

We conclude that the trial court's comment constituted harmless error. The evidence of Appellant's participation in the delivery of drugs from his residence was overwhelming. Officers monitored activities at the residence for over a month and they conducted three controlled purchases with an informant. Caballero testified about Appellant's actual participation in the August 23 transaction. Additionally, the video of the August 23 transaction depicted

15

Appellant's participation.  Accordingly, we have fair assurance that the trial court's comment had very little influence, if any, on the jury in light of the overwhelming evidence of Appellant's participation in the combination.  We overrule Appellant's second issue.

*This Court's Ruling*

We affirm the judgment of the trial court.


JOHN M. BAILEY

JUSTICE


July 31, 2014

Do not publish.  See TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.

16